[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 449.]

BALTIMORE RAVENS, INC., F.K.A. CLEVELAND BROWNS, INC., APPELLEE, *v.* SELF-INSURING EMPLOYERS EVALUATION BOARD ET AL., APPELLANTS.

[Cite as *Baltimore Ravens, Inc. v. Self-Insuring Emp. Evaluation Bd.*, 2002-Ohio-1362.]

*Workers' compensation—Disciplinary orders issued by the Self-Insuring Employers Evaluation Board pursuant to R.C. 4123.352(C) are not subject to judicial review under R.C. 119.12 of the Administrative Procedure Act.*

(No. 00-1744—Submitted October 16, 2001—Decided March 27, 2002.)

APPEAL from the Court of Appeals for Franklin County, Nos. 99AP-1262 and 99AP-1263.

———————————

**SYLLABUS OF THE COURT**

Disciplinary orders issued by the Self-Insuring Employers Evaluation Board pursuant to R.C. 4123.352(C) are not subject to judicial review under R.C. 119.12 of the Administrative Procedure Act.

———————————

**ALICE ROBIE RESNICK, J.**

{¶ 1} Appellants Ricky Bolden, Paul Farren, Mark Harper, Lee Jones, and Stacey Hairston were formerly employed as professional football players by appellee, Baltimore Ravens, Inc., and had played for appellee when it was doing business as the Cleveland Browns. Each player filed a complaint with the Self-Insuring Division of the Bureau of Workers' Compensation, alleging that the team had failed to pay workers' compensation benefits as previously ordered by the Industrial Commission of Ohio. The bureau found all five complaints valid and referred them to appellant, the Self-Insuring Employers Evaluation Board.

**{¶ 2}** After conducting an informal hearing, the board issued a comprehensive decision on March 10, 1999, addressing all five complaints. The board found that the Ravens "consistently refused to pay workers' compensation awards, acting in a manner inconsistent with its legal obligations." Based on what it described as the Ravens' "blatant and defiant behavior," the board recommended a fine of $10,000 on each complaint for a total fine of $50,000 to be paid to the bureau.

**{¶ 3}** The Ravens appealed this decision to the Franklin County Court of Common Pleas pursuant to R.C. 119.12 of the Administrative Procedure Act. (Case No. 99CVF-03-2486.) The Ravens alleged that the board had violated R.C. 4123.352(C), which requires that the board's determinations and recommendations for disciplining a self-insuring employer be made "after a hearing conducted pursuant to Chapter 119. of the Revised Code."

**{¶ 4}** On April 29, 1999, the board filed a motion to dismiss the Ravens' appeal for lack of jurisdiction. The board argued that its March 10, 1999 decision is not appealable under R.C. 119.12 because the board is a part of the bureau and R.C. 119.01(A) exempts the bureau's adjudications from the appeal provisions of the Administrative Procedure Act. Meanwhile, the board sought to correct the defect in its March 10 order by vacating that order and scheduling a new hearing to be held in compliance with R.C. 4123.352(C). In an order dated May 27, 1999, the board explained that its "previous findings are being vacated and held for naught in order that a determination of this matter can be made at a record hearing held in accordance with Chapter 119 [of] the Revised Code."

**{¶ 5}** On June 9, 1999, the trial court denied the board's motion to dismiss. According to the trial court, "R.C. 4123.[3]52(A) specifically provides that the board is to be considered part of the Bureau only for administrative purposes such as the equipment, space, and personnel required by the board to function." Thus,

the court denied the motion on the basis that the board is not part of the bureau "for the purposes of determining whether the provisions of R.C. 119.12 apply."

{¶ 6} Nevertheless, the board proceeded to hold a new hearing on June 14, 1999, and followed with a new order issued July 8, 1999, which is substantially the same as its March 10 order. The Ravens then appealed the board's July 8 order, and the board moved to dismiss this appeal as well. (Case No. 99CVF-07-5896.)

{¶ 7} On September 8, 1999, the trial court, under case No. 99CVF-07-5896, denied the board's motion to dismiss the Ravens' second appeal for the same reasons that it denied the board's motion to dismiss the Ravens' first appeal. On October 6, 1999, the trial court, under case No. 99CVF-03-2486, (1) held that the board's actions leading to the second appeal were void, (2) found that the board should have conducted a hearing pursuant to R.C. Chapter 119 before issuing its March 10, 1999 order, and (3) remanded the cause to the board for such a hearing. Also on October 6, 1999, the trial court dismissed case No. 99CVF-07-5896 on the basis that its decision in the other case "obviates the reason for and is dispositive of this matter."

{¶ 8} The board appealed both cases to the Court of Appeals for Franklin County. In a divided opinion, the court of appeals affirmed the judgments of the trial court. In so doing, the court found as follows:

"We agree with the Ravens that, although linked to the bureau of workers' compensation for administrative purposes, SIEEB is an independent quasi-judicial agency created by statute and not under the control of the bureau of workers' compensation for adjudicatory purposes. Although the administrator refers complaints to SIEEB, it is SIEEB, not the administrator or the bureau, that has jurisdiction to investigate, make findings, and order that corrective action or discipline be imposed by the administrator. Nothing in the statute permits the administrator to contravene any finding or determination that SIEEB makes. Even though discipline recommended by SIEEB is to be imposed by the administrator,

the act of imposing such discipline is ministerial in nature because R.C. 4123.35.2(C) precludes him from exercising any discretion in this regard. Therefore, we agree with the trial court that it had jurisdiction to hear the Ravens' appeal from the March 10, 1999 order of SIEEB."

{¶ 9} The court of appeals also found that "the actions taken by SIEEB at the June 14, 1999 hearing are of no effect." The court explained, "When a notice of appeal from a decision of an administrative agency has been filed, the agency is divested of its inherent jurisdiction to reconsider, modify, or vacate the decision." Accordingly, the appellate court remanded the cause to the board "for a new hearing conducted in accordance with R.C. Chapter 119 as the original hearing was not conducted in accordance with R.C. Chapter 119 and the second hearing was a nullity." The cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 10} Despite its disordered procedural history, this case presents two straightforward jurisdictional questions for our review. The first and primary issue involves the trial court's jurisdiction over the Ravens' appeals from the board's March 10 and July 8, 1999 decisions. More precisely, we are asked to decide whether the board's recommendations for disciplining a self-insured employer under R.C. 4123.352 are subject to judicial review under R.C. 119.12 of the Administrative Procedure Act.

{¶ 11} The second issue involves the board's jurisdiction to revisit matters that are the subject of a pending appeal, that is, whether the board was divested of jurisdiction to vacate and attempt to remedy the alleged defect in its March 10 decision while the Ravens' appeal of that decision was pending before the trial court.

I

Jurisdiction of the Trial Court

{¶ 12} The asserted basis for the trial court's jurisdiction is the residual clause in R.C. 119.12, which provides: "Any party adversely affected by any order of an *agency* issued pursuant to *any other adjudication* may appeal to the court of common pleas of Franklin county * * *." (Emphasis added.) Everyone agrees that the board's March 10, 1999 decision constitutes an order issued pursuant to an "adjudication," as that term is defined in R.C. 119.01(D). The dispute in this case revolves around the definition of "agency" in R.C. 119.01(A).

{¶ 13} R.C. 119.01(A) provides that, as used in R.C. 119.01 to 119.13:

" 'Agency' means, except as limited by this division, [1] any * * * board * * * having authority to promulgate rules or make adjudications in * * * the bureau of workers' compensation, [2] the functions of any administrative * * * board * * * of the government of the state specifically made subject to sections 119.01 to 119.13 of the Revised Code, and [3] the licensing functions of any administrative * * * board * * * of the government of the state having the authority or responsibility of issuing, suspending, revoking, or canceling licenses."

{¶ 14} R.C. 119.01(A) then sets forth a series of exclusions and limitations, including the following:

"Sections 119.01 to 119.13 of the Revised Code do not apply to actions of * * * the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication * * *."

{¶ 15} Thus, the board will be deemed an agency under R.C. 119.01(A) if it is described by one or more of the three branches of the definition of "agency" and not otherwise excluded. The courts below focused their analyses entirely on the exclusion for adjudications by the bureau. They found that the board, as established by R.C. 4123.352, is separate and independent from the bureau and, therefore, beyond the purview of this exclusion. However, they never determined

which, if any, of the three branches of the definition in R.C. 119.01(A) applies in the first instance to render the board an agency. Instead, their decisions seem to rest on the assumption that the board would be an agency under R.C. 119.01(A) so long as none of the specific exclusions was applicable. We disagree, on two levels.

{¶ 16} First, we find that the board is a part of the bureau for purposes of R.C. 119.01(A). In so doing, we acknowledge that certain aspects of the enabling legislation for the board, if viewed in isolation, could appear to support the autonomy of the board. Particularly, R.C. 4123.352(A) creates the board to consist of three members, who are appointed and/or subject to removal by the Governor, and R.C. 4123.352(C) requires the Administrator of Workers' Compensation to promptly and fully implement the board's recommendations for disciplining a self-insuring employer. When considering the totality of the statutory scheme, however, it becomes apparent that these isolated indicia of separateness do not truly reflect the board's essential character and function *vis-à-vis* the bureau.

{¶ 17} After creating the board and establishing the terms of its members, R.C. 4123.352 provides:

"(A) * * *

"For administrative purposes, the board is a part of the bureau of workers' compensation, and the bureau shall furnish the board with necessary office space, staff, and supplies. The board shall meet as required by the administrator of workers' compensation.

"(B) In addition to the grounds listed in section 4123.35 of the Revised Code pertaining to criteria for being granted the status as a self-insuring employer, the grounds upon which the administrator may revoke or refuse to renew the status includes [*sic*] failure to comply with any rules or orders of the administrator or to pay contributions to the self-insuring employers' guaranty fund established by section 4123.351 of the Revised Code, continued failure to file medical reports bearing upon the injury of the claimant, and failure to pay compensation or benefits

in accordance with law in a timely manner. A deficiency in any of the grounds listed in this division is sufficient to justify the administrator's revocation or refusal to renew the employer's status as a self-insuring employer. The administrator need not revoke or refuse to renew an employer's status as a self-insuring employer if adequate corrective action is taken by the employer pursuant to division (C) of this section.

"(C) The administrator shall refer to the board all complaints or allegations of misconduct against a self-insuring employer or questions as to whether a self-insuring employer continues to meet minimum standards. The board shall investigate and may order the employer to take corrective action in accordance with the schedule the board fixes. The board's determination in this regard need not be made by formal hearing but shall be issued in written form and contain the signature of at least two board members. If the board determines, after a hearing conducted pursuant to Chapter 119. of the Revised Code and the rules of the bureau, that the employer has failed to correct the deficiencies within the time fixed by the board or is otherwise in violation of this chapter, the board shall recommend to the administrator revocation of an employer's status as a self-insuring employer or such other penalty which may include, but is not limited to, probation, or a civil penalty not to exceed ten thousand dollars for each failure. A board recommendation to revoke an employer's status as a self-insuring employer shall be by unanimous vote. A recommendation for any other penalty shall be by majority vote. Where the board makes recommendations to the administrator for disciplining a self-insuring employer, the administrator promptly and fully shall implement the recommendations."

{¶ 18} As established under R.C. 4123.352, the board is not self-sustaining or self-governing. It is not charged with administering or implementing any legislation, does not have its own staff or agenda, and does not promulgate any rules or regulations. The board is devoid of power to execute or enforce its own

recommendations and cannot autonomously impose a penalty, revoke or refuse to renew a self-insurer's status, or otherwise take disciplinary action against a self-insuring employer. Only the administrator has the statutory authority to take such action. Indeed, the power given to the administrator under R.C. 4123.352 is correlative to that given under R.C. 4123.35, which vests the administrator with the exclusive authority to grant or deny the privilege of self-insurance in the first instance. The board meets only as required by the administrator, who makes the initial determination of whether a complaint is valid and should be referred to the board. See Ohio Adm.Code 4123-9-06(A)(3), 4123-19-09(A), (B), and (D), and 4123-19-13(B). The board is dependent upon the bureau for office space, staff, and supplies, and is subject to those administrative rules that the bureau promulgates for the board pursuant to R.C. 119.03. Rather than being a separate and independent agency under R.C. 4123.352, the board is inextricably entangled with and dependent upon the bureau.

{¶ 19} In addition, R.C. 4123.352(A) expressly provides, "For administrative purposes, the board is a part of the bureau of workers' compensation." However, the Ravens contend that the reference to "administrative purposes" in this provision is "limiting language." Invoking the ancient maxim of statutory interpretation "*expressio unius est exclusio alterius*," meaning that the expression of one thing is the exclusion of another, the Ravens construe this language as implying that the board is independent from the bureau for all but administrative purposes. Similarly, the trial court found that R.C. 4123.352(A) "*specifically* provides that the board is to be considered part of the Bureau *only* for administrative purposes." (Emphasis added.) And *amicus curiae*, General Motors Corporation, actually inserts and italicizes the word "only" in its quotation of R.C. 4123.352(A).

{¶ 20} Of course, R.C. 4123.352(A) does not contain the word "only" or any other indication that the phrase "administrative purposes" was intended to

restrict the board's connection to the bureau. In any case, this court has long recognized that the canon "*expressio unius est exclusio alterius*" is not an interpretive singularity but merely an aid to statutory construction, which must yield whenever a contrary legislative intent is apparent. See, *e.g.*, *State ex rel. Jackman v. Court of Common Pleas of Cuyahoga Cty.* (1967), 9 Ohio St.2d 159, 164, 38 O.O.2d 404, 407, 224 N.E.2d 906, 910; *Smilack v. Bowers* (1958), 167 Ohio St. 216, 218-219, 4 O.O.2d 271, 273, 147 N.E.2d 499, 501; *State ex rel. Curtis v. DeCorps* (1938), 134 Ohio St. 295, 12 O.O. 96, 16 N.E.2d 459; *State v. Cleveland* (1910), 83 Ohio St. 61, 67, 93 N.E. 467, 468.

{¶ 21} In *Sec. & Exchange Comm. v. C.M. Joiner Leasing Corp.* (1943), 320 U.S. 344, 350-351, 64 S.Ct. 120, 123, 88 L.Ed. 88, 93, the United States Supreme Court declined to invoke the canon, explaining as follows:

"Some rules of statutory construction come down to us from sources that were hostile toward the legislative process itself and thought it generally wise to restrict the operation of an act to its narrowest permissible compass. However well these rules may serve at times to aid in deciphering legislative intent, they long have been subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy." (Footnotes omitted.) See, also, *Herman & MacLean v. Huddleston* (1983), 459 U.S. 375, 387, 103 S.Ct. 683, 690, 74 L.Ed.2d 548, 558, fn. 23.

{¶ 22} Accordingly, we interpret the phrase "administrative purposes" in R.C. 4123.352(A) to comport with the statute's overriding design, which is to place the board under the aegis of the bureau. In this light, the phrase "For administrative purposes" appears not to limit the relationship between the board and the bureau, but merely to designate the administrative agency to which the board belongs. It is simply an indication that the board is a part of the bureau rather than a part of the

Industrial Commission, one of whose members serves, *ex officio*, as chairman of the board.

**{¶ 23}** We conclude, therefore, that the board is a part of the bureau for purposes of R.C. 119.01(A), that the exclusion for adjudications by the bureau is applicable to the board, and that the board's adjudications are generally exempt from the provisions of the Administrative Procedure Act, including those in R.C. 119.12 governing the right of appeal to common pleas court.

**{¶ 24}** On a more basic level, we find that even if the board were distinct from the bureau for purposes of R.C. 119.01(A), as held below, it would still lack the status of an agency subject to R.C. Chapter 119 for purposes of judicial review.

**{¶ 25}** The courts below carried their analyses only so far as to conclude that the board is not expressly *excluded* from the definition of agency set forth in R.C. 119.01(A). But at some point, they should have determined whether and to what extent the board is *included* in the statutory definition. If the board is not a part of the bureau under R.C. 119.01(A), as held below, then of course the exclusion for bureau adjudications is not applicable to the board. By the same token, however, it can no longer be concluded that the board is an agency by virtue of being "in * * * the bureau" under the first branch of R.C. 119.01(A)'s definition of "agency." The only remaining definition that is potentially applicable includes "the functions of any * * * board * * * specifically made subject to sections 119.01 to 119.13 of the Revised Code." The courts below should have been compelled by their own view of the board's independence to consider whether and to what extent the board is specifically made subject to R.C. Chapter 119 in the enabling legislation. Having failed to address this aspect of the issue, those courts rendered incomplete analyses.

**{¶ 26}** R.C. 4123.352(C) authorizes the board to make recommendations to the administrator for disciplining a self-insuring employer *"after a hearing conducted* pursuant to Chapter 119. of the Revised Code." (Emphasis added.)

10

According to *amicus curiae* General Motors, "the reference in R.C. § 4123.352(C) to a 'Hearing' incorporates and includes not only the board's hearing room adjudicatory procedure but also the APA provided judicial review of it." The Ravens argue that any other interpretation would be inconsistent with R.C. 119.01(E), which defines "hearing" as "a public hearing by any agency in compliance with procedural safeguards afforded by sections 119.01 to 119.13 of the Revised Code."

{¶ 27} On the other hand, the board argues that in providing for a hearing conducted pursuant to R.C. Chapter 119, the General Assembly "did not likewise provide that an *'appeal'* pursuant to that Chapter would follow. * * * Had our lawmakers intended to provide for such review of the SIEEB's orders, they could easily have done so. * * * Instead, the legislature clearly expressed its intent by specifying that only the 'hearing' was subject to Chapter 119." (Emphasis *sic*.) We agree with the board.

{¶ 28} R.C. 4123.352(C) does not incorporate R.C. Chapter 119 for all purposes. In requiring the board to make its recommendations to the administrator after a hearing conducted pursuant to R.C. Chapter 119, R.C. 4123.352(C) establishes the procedure leading up to the board's decision. In so doing, the statute incorporates R.C. Chapter 119 for the purpose of delineating the guidelines that govern the board's actions on a predecisional administrative level. It does not, however, incorporate R.C. Chapter 119 into the process at the postadjudicatory level. Instead, the statute directs the administrator to promptly and fully implement the board's recommendations, without providing for any intervening appeal. R.C. 4123.352(C) simply requires the board to conduct a hearing pursuant to R.C. Chapter 119 before it makes any disciplinary recommendations to the administrator. It does not subject the board to R.C. Chapter 119 for all purposes, and certainly not for purposes of judicial review.

**{¶ 29}** This is not the first time that the court has encountered legislation that incorporates R.C. Chapter 119 for purposes other than judicial review. R.C. Chapter 4112 is the enabling legislation for the Ohio Civil Rights Commission. Former R.C. 4112.05(G) provided that if the commission determines from evidence presented at hearing that an unlawful discriminatory practice has been committed, it "shall issue and, subject to the provisions of Chapter 119. of the Revised Code, cause to be served on such respondent an order." 138 Ohio Laws, Part I, 2281.

**{¶ 30}** In addition, former R.C. 4112.05(I) provided:

"Until a transcript of the record in a case is filed in a court as provided in section 4112.06 of the Revised Code, the commission may, subject to the provisions of Chapter 119. of the Revised Code, * * * modify or set aside in whole or in part, any finding or order made by it." 138 Ohio Laws, Part I, 2282.

**{¶ 31}** Yet despite these references to R.C. Chapter 119, this court held that the Ohio Civil Rights Commission is not subject to the thirty-day record-certification requirement of R.C. 119.12 because the enabling legislation did not specifically make the commission subject to R.C. Chapter 119 for purposes of judicial review. In *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 194, 20 O.O.3d 200, 201, 421 N.E.2d 128, 130, the court explained:

"Reading R.C. Chapters 119 and 4112 together leads to an incongruous result. A literal reading of the statutory language reveals that the commission is an agency specifically subject to R.C. Chapter 119 for purposes of R.C. 4112.05(G) and (I). Under R.C. 4112.06, however, the commission is not an agency because judicial review of commission proceedings is not specifically made subject to R.C. Chapter 119. We are constrained to hold that the commission's administrative split personality represents the intent of the General Assembly. Therefore, the Court of Appeals erred in concluding that the commission is an agency subject to R.C. Chapter 119 for purposes of judicial review."

**{¶ 32}** A consideration of former R.C. 4121.44 is also instructive. Former R.C. 4121.44(Q) (143 Ohio Laws, Part II, 3294-3297) was effective from November 3, 1989, until October 20, 1993, when R.C. 4121.44 was repealed and replaced by the provisions governing the newly established qualified health plan and health care partnership program, R.C. 4121.44 to 4121.443. Former R.C. 4121.44(Q) required the administrator to adopt rules for excluding from the system health care providers who engage in certain practices as part of the treatment of workers' compensation claimants. Former R.C. 4121.44(Q) expressly provided that these rules "shall provide procedures for review *and appeal, pursuant to Chapter 119. of the Revised Code*." (Emphasis added.)

**{¶ 33}** In *In re Seltzer* (1993), 67 Ohio St.3d 220, 616 N.E.2d 1108, the court held that the administrator's orders under former R.C. 4121.44(R) are not subject to judicial review under R.C. Chapter 119. In so holding, the court explained:

"Under division (Q), the General Assembly specifically included a right to review and appeal in compliance with R.C. Chapter 119. The General Assembly did not include this appeal provision in division (R). * * * This comparison of the language in divisions (Q) and (R) leads us to conclude that the General Assembly did not intend to allow orders issued under R.C. Chapter 4121.44(R) to be appealed under R.C. Chapter 119." *Id.*, 67 Ohio St.3d at 223, 616 N.E.2d at 1111.

**{¶ 34}** These principles were also recognized by the federal district court in *Lexington Supermarket, Inc. v. United States Dept. of Agriculture* (S.D.Ohio 1999), 84 F.Supp.2d 886. The court held that the decisions of the Ohio Department of Health disqualifying or suspending a vendor from the Women, Infants and Children's Program are not subject to judicial review under R.C. 119.12. Recognizing that "a state agency could be subject to Ohio Rev.Code Ch. 119 for some purposes but not for others," the court explained:

"Similar to Chapter 4112, the statute authorizing the Ohio Department of Health to administer the WIC program subjects the ODH to Chapter 119 for some purposes but not for others. Ohio Rev.Code § 3701.132 specifies that any rulemaking in which ODH may engage to effectuate the WIC program must be conducted pursuant to Chapter 119. There is no other reference to Chapter 119, and the statute does not provide a right of judicial review, pursuant to Ohio Rev.Code § 119.12. The reference to the ODH as a 'state agency,' without a specific reference to Chapter 119, is insufficient to subject the ODH to that Chapter for every action it takes while administering the WIC program. Accordingly, although § 3701.132 provides that ODH is subject to Ohio Rev.Code Ch. 119 to the extent it engages in rulemaking for the WIC program, the Court concludes that § 3701.132 does not subject ODH to § 119.12 for purposes of a WIC vendor's right to appeal." *Id.*, 84 F.Supp.2d at 890.

{¶ 35} The dissent argues that "[n]one of the three cases the majority cites, however, supports its analysis because each concerned a dissimilar statutory scheme." The dissent then attempts to distinguish each statute in accordance with its underlying theme that R.C. 4123.352(C) incorporates the entirety of R.C. Chapter 119.

{¶ 36} The dissimilarities in the statutory schemes to which the dissent refers, however, are distinctions without a difference for purposes of the present analysis. The critical similarity between R.C. 4123.352(C) and the statutes under review in *Plumbers & Steamfitters* and *Lexington Supermarket* is that they all contain a *qualified* incorporation of R.C. Chapter 119 and, therefore, *do not* incorporate the entirety of R.C. Chapter 119. What the dissent ignores is that R.C. 4123.352(C), *like those other statutes*, incorporates R.C. Chapter 119 *for a limited purpose*. Instead, the dissent simply overlooks the fact that R.C. 4123.352(C) incorporates R.C. Chapter 119 specifically for the purpose of *conducting a hearing* that takes place *before* an adjudication is made by an advisory board under a scheme

that directs the administrator to implement the board's recommendations without providing for any intervening judicial review.

{¶ 37} On the other hand, it appears that where the General Assembly does intend to make an agency's adjudications appealable under R.C. Chapter 119, it will either specifically provide for such an appeal, as it did in former R.C. 4121.44(Q), or incorporate R.C. Chapter 119 into the enabling legislation without qualification. R.C. 3301.13 is an example of an unqualified incorporation of R.C. Chapter 119. It provides:

"*In the exercise of any of its functions or powers,* including the power to make rules and regulations and to prescribe minimum standards *the department of education*, and any officer or agency therein, *shall be subject to Chapter 119. of the Revised Code.*" (Emphasis added.)

{¶ 38} Based on all of the foregoing, we hold that disciplinary orders issued by the Self-Insuring Employers Evaluation Board pursuant to R.C. 4123.352(C) are not subject to judicial review under R.C. 119.12 of the Administrative Procedure Act.

{¶ 39} Accordingly, the trial court lacked jurisdiction over the Ravens' appeals from the board's March 10 and July 8, 1999 decisions, and the judgment of the court of appeals is reversed as to this issue.

II

Jurisdiction of the Board

{¶ 40} It is well established that in the absence of express statutory authority to the contrary, once a decision of an administrative board is appealed to court, the board is divested of its inherent jurisdiction to reconsider, vacate, or modify that decision. See *Lorain Edn. Assn. v. Lorain City School Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 12, 544 N.E.2d 687; *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28 OBR 83, 502 N.E.2d 590; *State ex rel. Republic Steel Corp. v. Environmental Bd. of Rev.* (1978), 54 Ohio St.2d 75, 80, 8 O.O.3d 79, 82,

374 N.E.2d 1355, 1358. Even if the court itself lacks subject-matter jurisdiction over the cause, the board still has no power to relitigate the disputed issues during the pendency of the appeal. *State ex rel. Borsuk v. Cleveland* (1972), 28 Ohio St.2d 224, 227-228, 57 O.O.2d 464, 466, 277 N.E.2d 419, 421; *Diltz v. Crouch* (1962), 173 Ohio St. 367, 19 O.O.2d 312, 182 N.E.2d 315.

{¶ 41} Once the Ravens filed its appeal from the board's March 10, 1999 order, the board was divested of jurisdiction to vacate that order, hold a new formal hearing on June 14, 1999, and issue a second order on July 8, 1999. Since these actions took place while the Ravens' appeal was pending, they are of no force or effect. Thus, the trial court correctly determined that the board's postappeal actions are a nullity.

{¶ 42} However, the trial court did not vacate the board's postappeal actions solely to render them ineffective. Instead, the trial court found that because the board had no jurisdiction to take those actions, it failed to remedy the defect in its March 10 order. Having found the deficiency still remaining, the court ordered the board to vacate its March 10 order and conduct a new hearing pursuant to R.C. Chapter 119. As this order goes to the merits of the appeal, it required the trial court to exercise the very jurisdiction it lacks. Thus, we find that although the trial court correctly nullified the board's postappeal actions, it nevertheless lacked the power to remand the cause for a new hearing. While the Ravens may indeed be entitled to a new hearing conducted pursuant to R.C. Chapter 119, as everyone seems to agree it is, the appropriate proceeding in which to obtain such relief would be an action in mandamus.

{¶ 43} For all of the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to the trial court to enter the appropriate dismissal.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

COOK, J., dissents.

_____

**COOK, J., dissenting.**

{¶ 44} The majority holds that because the board is a part of the bureau, and because it is not an agency, there is no right to appeal board disciplinary recommendations to the Franklin County Common Pleas Court. But by analyzing the text of the statute creating the board and the text of the administrative procedure statutes that are expressly incorporated into the board statutory scheme, I conclude that the majority's holding is incorrect.[1]

*R.C. 4123.352 Incorporates R.C. Chapter 119*

{¶ 45} The statute creating the board is the starting point for deciding the question regarding appealability of board orders. That statute, R.C. 4123.352, provides that if the board opts to pursue imposition of a penalty, as the board did here, then the board must conduct the required formal hearing "pursuant to Chapter 119. of the Revised Code and the rules of the bureau." Notably, the General Assembly referred to the *entirety* of R.C. Chapter 119 and not just select provisions. Included within that chapter is R.C. 119.01(E), which defines a "hearing" (as that word is used in R.C. Chapter 119, and therefore by incorporation in R.C. 4123.352's "formal hearing" provision) as "a public hearing by any agency in compliance with procedural safeguards afforded by sections 119.01 to 119.13 of the Revised Code." By this reading of R.C. 4123.352 and 119.01(E), a "hearing" conducted pursuant to R.C. Chapter 119 encompasses the "procedural safeguard" of R.C. 119.12—the right to appeal agency adjudications.

---

1. I express no opinion on whether board orders of corrective action that do not arise from formal hearings are appealable. See R.C. 4123.352(C).

{¶ 46} R.C. 119.12 provides a general right to appeal "any order of an agency issued pursuant to * * * [an] adjudication." Thus, assuming that the board is an "agency" and its decision can be shown to be an "adjudication," it would seem that the Ravens ought to be able to appeal the board's disciplinary recommendations. But the definitions section of R.C. Chapter 119 further limits the applicability of this right of appeal:

"Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication * * *." R.C. 119.01(A).

{¶ 47} This case, then, turns on three interrelated questions. The first two questions target whether the R.C. 119.12 right to appeal *can* apply here: (1) is the board an agency, and (2) does board action constitute an "adjudication"? The third question targets whether the R.C. 119.01(A) exclusion applies to the board: (3) is the board distinct from the bureau so that its actions are not "actions * * * of the bureau," which are removed from the purview of R.C. Chapter 119 and its appeal provision? If the answer to all three questions is yes, then there is a right of appeal. If the answer to any question is no, then a party may not challenge board decisions by way of appeal to court.

*The Board Satisfies the Statutory Definition of an Agency*

{¶ 48} As the majority notes, R.C. 119.01(A) defines "agency" in three ways. The second—"the functions of any administrative or executive * * * board * * * specifically made subject to sections 119.01 to 119.13 of the Revised Code"— on its face encompasses the board's disciplinary functions. R.C. 4123.352(C) specifically makes the board subject to R.C. Chapter 119 in disciplinary proceedings. Because R.C. Chapter 119 consists of "sections 119.01 to 119.13 of the Revised Code," the board is therefore an agency within the meaning of R.C. 119.01(A).

{¶ 49} The board's disciplinary recommendations thus meet the first of the two qualifiers for R.C. 119.12's right to appeal "*any order of an agency* issued pursuant to any other adjudication * * * to the court of common pleas of Franklin county." (Emphasis added.)

*Board Action Constitutes an Adjudication*

{¶ 50} The next question is whether a board disciplinary recommendation constitutes an "adjudication" as contemplated in the second qualifier of R.C. 119.12. If it does not, then there cannot be an R.C. 119.12 right of appeal. Because the majority finds the agency qualifier dispositive, the majority concedes the adjudication issue, noting only that "[e]veryone agrees that the board's March 10, 1999 decision constitutes an order issued pursuant to an 'adjudication,' as that term is defined in R.C. 119.01(D)."

{¶ 51} R.C. 119.01(D) defines an "adjudication" as "the determination by the highest or ultimate authority of an agency of the rights, duties, privileges, benefits, or legal relationships of a specified person, but does not include * * * acts of a ministerial nature." Here, the board consists of three members whom the statute charges with investigating "all complaints or allegations of misconduct against a self-insuring employer or questions as to whether a self-insuring employer continues to meet minimum standards." R.C. 4123.352(A) and (C). The board then may issue disciplinary recommendations to the bureau administrator, who "promptly and fully shall implement the recommendation." R.C. 4123.352(C).

{¶ 52} Board action satisfies the three foregoing requirements to constitute an R.C. Chapter 119 adjudication. First, the three board members are the "highest or ultimate authority" of the board, an agency. Second, they determine the rights, duties, privileges, benefits, or legal relationships of a specified person. Because R.C. 119.01(D) does not define "person," the default definition of the term applies: " 'Person' includes an individual, corporation, business trust, estate, trust, partnership, and association." R.C. 1.59(C) (providing definitions "used in any

statute, unless another definition is provided in such statute or a related statute"). Here, the board determines the rights, duties, privileges, benefits, or legal relationships of the five former football players and the Ravens. Third, the board's actions are not ministerial in nature. Although the General Assembly does not define "ministerial" in R.C. Chapter 119, the legislature has directed that courts shall construe statutory words and phrases in context and according to common usage, unless the words have acquired a technical or particular meaning. R.C. 1.42. The common definition of "ministerial" is "[o]f or relating to an act that involves obedience to instructions or laws instead of discretion, judgment, or skill." Black's Law Dictionary (7 Ed.1999) 1011. Cf. *State ex rel. Trauger v. Nash* (1902), 66 Ohio St. 612, 618, 64 N.E. 558. Although the fact that the board *recommends* penalties might suggest that its determinations are not adjudications, the board's penalty recommendations bind the bureau administrator in that the administrator lacks discretion to vary from the recommendations in implementing them. R.C. 4123.352(C). It is the board that the General Assembly charges with exercising decision-making and discretion.

{¶ 53} For these reasons, board disciplinary recommendations constitute *agency adjudications* within the meaning of R.C. 119.01(D) and 119.12. This means that there is a right to appeal such determinations, unless board action constitutes bureau action that is exempted from R.C. Chapter 119 treatment.

*Board Action Is Not Bureau Action*

**{¶ 54}** The remaining question is whether, even if the board is an agency making adjudications, the board is so intertwined with the bureau as to constitute a part of the bureau. If the board were part of the bureau so that board actions are "actions of the * * * bureau," then the majority would be correct in concluding that the R.C. 119.12 right of appeal does not apply to the board. In fact, if the board is part of the bureau, *no* provision of R.C. Chapter 119 could apply to the board, save for the R.C. 119.01(A) exclusion.

**{¶ 55}** But two basic reasons establish that, despite their interrelationship, the board is a separate entity from the bureau.

**{¶ 56}** The first reason is that one cannot reconcile the statutory schemes of R.C. Chapter 4123 and Chapter 119 if board action constitutes bureau action. If the board is part of the bureau, R.C. 4123.352's incorporation of R.C. Chapter 119 directly conflicts with R.C. 119.01(A)'s exclusion of R.C. Chapter 119. That is, R.C. 4123.352(C) would refer parties to R.C. Chapter 119 for controlling authority regarding the board's formal hearings, only to be met with the obstacle of R.C. 119.01(A) *foreclosing* that chapter's application to R.C. 4123.352(C) formal hearings. But it is presumed that, in enacting a statute, the General Assembly intended a result feasible of execution. R.C. 1.47(D). Thus, construing R.C. 4123.352 and 119.01 *in pari materia*, the only reading that supports cohesive, feasible operation is the one that establishes the board as separate from the bureau, thereby obviating the R.C. 119.01(A) obstacle to the R.C. 119.12 right to appeal. Cf. *Blackwell v. Bowman* (1948), 150 Ohio St. 34, 43-44, 37 O.O. 323, 80 N.E.2d 493 ("It is a fundamental rule in construing a statute that all parts of it must be construed together and any apparent contradictions reconciled, if possible").

**{¶ 57}** The majority's exegesis also runs afoul of the R.C. 1.47(B) presumption that "[t]he entire statute is intended to be effective," because it nullifies

R.C. 4123.352(C)'s incorporation of the *entirety* of R.C. Chapter 119 *despite the plain language calling for such incorporation.*

**{¶ 58}** Today's majority concludes that R.C. 4123.352(C) "incorporates R.C. Chapter 119 for the purpose of delineating the guidelines that govern the board's actions on a predecisional administrative level. It does not, however, incorporate R.C. Chapter 119 into the process at the postadjudicatory level." Its holding, then, is that the unambiguous text "Sections 119.01 to 119.13 of the Revised Code do not apply to actions of the industrial commission or the bureau of workers' compensation under sections 4123.01 to 4123.94 of the Revised Code with respect to all matters of adjudication * * *" *actually* means that *some* of the sections nevertheless still apply to board/bureau action. And when the General Assembly used inclusive language in R.C. 119.01(E) in defining a hearing as "a public hearing by any agency in compliance with procedural safeguards afforded by sections 119.01 to 119.13 of the Revised Code," it was nevertheless excluding R.C. 119.12 when the board is involved. Neither proposition finds support in the text of the statutes or in our rules of statutory construction.

**{¶ 59}** As support for its construction of the statutory scheme, the majority cites a number of cases as standing for the proposition that "[t]his is not the first time that the court has encountered legislation that incorporates R.C. Chapter 119 for purposes other than judicial review." I agree with this statement. None of the three cases the majority cites, however, supports its analysis because each concerned a dissimilar statutory scheme.

**{¶ 60}** The majority first cites *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, as supporting its holding. I agree that this case supports the proposition that the General Assembly can incorporate portions of R.C. Chapter 119 without incorporating the R.C. 119.12 right to judicial review. But the important distinction between R.C. Chapter 4112 and the present case is

that R.C. 4112.06 itself specifically provided for judicial review of commission orders. Here, R.C. Chapter 4123 contains no such provision; rather, R.C. 4123.352(C) incorporates the entirety of R.C. Chapter 119, including the appellate mechanism. Similarly, *In re Seltzer* (1993), 67 Ohio St.3d 220, 616 N.E.2d 1108, fails to inform the present inquiry. There, the court addressed whether orders issued by the bureau administrator under R.C. 4121.44(R) were subject to review under R.C. Chapter 119. Contrary to the majority's characterization of the case, the fact that R.C. 4121.44(Q) contained a specific right of appeal under R.C. Chapter 119 that R.C. 4121.44(R) lacked is not the dispositive factor. Rather, the court held that because "the administrator's decision to suspend a provider under R.C. 4121.44(R) is a ministerial act, * * * such a decision is not an 'adjudication' as defined in R.C. 119.01(D)." *Id*. at 225, 616 N.E.2d 1108. And because R.C. 119.12 provides for appeals of agency orders issued pursuant to *adjudications*, the court correctly determined that there was no right to appeal. *Id*. This contrasts with the present case, which all parties agree involves adjudications.

{¶ 61} The majority's reliance on *Lexington Supermarket, Inc. v. United States Dept. of Agriculture* (S.D.Ohio 1999), 84 F.Supp.2d 886, is equally unpersuasive. There, as the majority notes, the federal district court determined that vendors could not appeal decisions of the Ohio Department of Health under R.C. 119.12. But what the majority neglects to credit sufficiently is that the enabling statute in that case referred to R.C. Chapter 119 *only* for purposes of rulemaking; there was no direct or indirect incorporation of the R.C. 119.12 right to appeal adjudications. See R.C. 3701.132. In the instant case, however, R.C. 4123.352 incorporates the entirety of R.C. Chapter 119—which includes both R.C. 119.12, which creates the right to appeal adjudications, and R.C. 119.01(E), which attaches this right to the definition of a hearing. None of the cases cited by the majority therefore targets the precise statutory framework at issue here. As such, they provide no substantive support for the majority's reasoning. The only

reasonable construction of R.C. Chapter 119 and Chapter 4123 that supports the substance of the General Assembly's enactments is one that provides for judicial review.

**{¶ 62}** The second reason compelling my dissent is that R.C. 4123.352(A) characterizes the board as distinct from the bureau for all but one limited purpose. That statute provides that "*[f]or administrative purposes*, the board is a part of the bureau of workers' compensation, and the bureau shall furnish the board with necessary office space, staff, and supplies." (Emphasis added.) R.C. 4123.352(A). The Ravens urge the court to construe this language in accordance with the Latin maxim *expressio unius est exclusio alterius*—"to express or include one thing implies the exclusion of the other"—and find that the General Assembly has distinguished the board from the bureau for all purposes *except for* administrative purposes.

**{¶ 63}** I agree with this reasoning. In so doing, I join the majority in appreciating that while this maxim may inform the court's decision, the legal canon is not always controlling. Here, however, I find the maxim applicable. The General Assembly has enacted legislation in which the statutory detail—the "administrative purposes" provision—conforms with the dominating general purpose of the statutory scheme: to establish the board as an agency separate from the bureau.

**{¶ 64}** There exists further support for this position in R.C. 4123.352(A)'s mandate that "the bureau shall furnish the board with necessary office space, staff, and supplies." If the board were indeed a part of the bureau, the General Assembly would not have needed to set forth the necessity for supplying administrative support in R.C. 4123.352(A). The predecessor of R.C. 4121.121(B)(4) *already* required the bureau administrator to "[p]rovide offices, equipment, supplies, and other facilities for the *bureau*." (Emphasis added.) Former R.C. 4121.121(D), Sub.H.B. No. 201, 141 Ohio Laws, Part I, 2362. A court should construe a statute, if possible, so that " 'no clause, sentence, or word shall be superfluous, void, or

insignificant.' " *TRW Inc. v. Andrews* (2001), 534 U.S. 19, ___, 122 S.Ct. 441, 449, 151 L.Ed.2d 339, 350, quoting *Duncan v. Walker* (2001), 533 U.S. 167, ___, 121 S.Ct. 2120, 2125, 150 L.Ed.2d 251, 259. See, also, *Brown v. Martinelli* (1981), 66 Ohio St.2d 45, 50, 20 O.O.3d 38, 419 N.E.2d 1081. The majority's reading of the "administrative purposes" language, however, renders that portion of R.C. 4123.352(A) wholly superfluous.

{¶ 65} The majority proffers an explanation for the statutory provision: that it serves "merely to designate the administrative agency to which the board belongs. It is simply an indication that the board is a part of the bureau rather than a part of the Industrial Commission." Yet the majority's theory insufficiently addresses the question of why the General Assembly specified this linkage for *administrative* purposes, when it supposedly intended that the board and bureau were linked for *all* purposes. Thus, while it is not itself dispositive, I find that the "administrative purposes" provision of R.C. 4123.352(A) is additional textual support for the view that the General Assembly intended that the board be distinct from the bureau for *all but* administrative purposes.

*Conclusion*

{¶ 66} The statutory scheme set forth in R.C. Chapter 4123 and Chapter 119 evinces legislative intent to establish the board as a separate agency from the bureau. Accordingly, I would hold that Chapter 119, with its right to appeal to court, applies to board disciplinary recommendations. And once a party appeals a board disciplinary recommendation, the board lacks jurisdiction to vacate that recommendation. See *Lorain Edn. Assn. v. Lorain City School Dist. Bd. of Edn.* (1989), 46 Ohio St.3d 12, 544 N.E.2d 687, syllabus ("When a notice of appeal from a decision of an administrative agency has been filed, the agency is divested of its inherent jurisdiction to reconsider, vacate or modify the decision unless there is express statutory language to the contrary").

**{¶ 67}** Because I would therefore affirm the judgment of the court of appeals, I respectfully dissent.

_____

*Dinn, Hochman, Potter & Levy, L.L.C.,* and *Irwin J. Dinn*, for appellee.

*Betty D. Montgomery,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellant Self-Insuring Employers Evaluation Board.

*Cornrich & Cornrich Co., L.P.A.,* and *Neil Cornrich*, for appellants Ricky Bolden, Paul Farren, Mark Harper, Lee Jones, and Stacey Hairston.

*Vorys, Sater, Seymour & Pease, L.L.P., F. Daniel Balmert* and *Deron A. Cook*, urging affirmance for *amicus curiae* General Motors Corp.

_____