PLUMBERS & STEAMFITTERS JOINT APPRENTICESHIP
COMMITTEE, APPELLEE, *v.* OHIO CIVIL RIGHTS
COMMISSION ET AL., APPELLANTS.

(No. 80-1100 — Decided May 20, 1981.)

*Messrs. Millisor, Belkin & Nobil* and *Mr. Jeffrey A. Belkin,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. Joseph M. Oser,* for appellants.

SWEENEY, J.

## I A.

The procedural question raised in this appeal is whether the commission is subject to the 30-day (formerly 20-day) record certification requirement of R. C. 119.12. R. C. Chapter 119, the Administrative Procedure Act, establishes the procedural framework within which state agencies must operate. R. C. 119.01 defines "agency" in three ways for purposes of the Act. The first category consists of agencies enumerated in the statute.[2] The second category includes "the functions of any administrative or executive officer, department, division,***or *commission***specifically made subject to sections 119.01 to 119.13* of the Revised Code." (Emphasis added.) Administrative agencies with the authority to issue, suspend, revoke or cancel licenses comprise the third group of agencies to which R. C. Chapter 119 applies. The statute also exempts certain other named agencies from its coverage.[3]

The commission is neither expressly included in nor expressly excluded from the statutory definition of agency. The commission does not engage in licensing activities. Therefore, the only potentially applicable portion of the statutory definition is the second category, and the question is whether the

---

[2] The enumerated agencies to which R. C. Chapter 119 generally applies are: the Bureau of Employment Services, the Civil Service Commission, the Department of Industrial Relations, the Department of Liquor Control, the Department of Taxation, the Department of Tax Equalization, the Industrial Commission, and the Bureau of Workers' Compensation.

[3] The Public Utilities Commission is exempted. Specified actions of the respective superintendents of banks, building and loan associations, and insurance are excluded from R. C. Chapter 119. Certain activities of the Industrial Commission, the Bureau of Workers' Compensation, and the Bureau of Employment Services are also excluded.

commission is "specifically made subject to sections 119.01 to 119.13." See *Fair* v. *School Employees Retirement System* (1975), 44 Ohio App. 2d 115.

The enabling legislation for the commission is contained in R. C. Chapter 4112. R. C. 4112.05 sets forth the procedures that the commission must follow in pursuing discrimination complaints. R. C. 4112.06 governs judicial review of commission orders. R. C. 4112.05(G) and 4112.05(I) specifically subject the commission to R. C. Chapter 119. R. C. 4112.06 makes no reference to R. C. Chapter 119.

Reading R. C. Chapters 119 and 4112 together leads to an incongruous result. A literal reading of the statutory language reveals that the commission is an agency specifically subject to R. C. Chapter 119 for purposes of R. C. 4112.05(G) and (I). Under R. C. 4112.06, however, the commission is not an agency because judicial review of commission proceedings is not specifically made subject to R. C. Chapter 119. We are constrained to hold that the commission's administrative split personality represents the intent of the General Assembly. Therefore, the Court of Appeals erred in concluding that the commission is an agency subject to R. C. Chapter 119 for purposes of judicial review.

## I B.

The Court of Appeals, upon finding the commission to be an agency subject to R. C. Chapter 119, applied R. C. 119.12, which states in relevant part:

"Within thirty days [formerly 20 days] after receipt of notice of appeal from an order in any case wherein a hearing is required by sections 119.01 to 119.13 of the Revised Code, the agency shall prepare and certify to the court a complete record of the proceedings in the case. Failure of the agency to comply within the time allowed shall, upon motion, cause the court to enter a finding in favor of the party adversely affected."

Since the commission concededly did not certify the record within the then applicable 20-day period, the Court of Appeals granted judgment for JAC, which had timely moved for final judgment pursuant to R. C. 119.12 in the Court of Common Pleas.

The Court of Appeals noted that "[i]f no time limit applies

to a late filing, then years could pass before the Commission need file a transcript." Moreover, undue delay would be a denial of due process and could otherwise seriously prejudice the parties. For these reasons, the Court of Appeals invoked R. C. 119.12 and imposed the 20-day record certification requirement.

The Court of Appeals' reliance on R. C. 119.12 and *Matash* v. *Dept. of Insurance* (1964), 177 Ohio St. 55, was misplaced because it is R. C. 4112.06(B) which governs certification of the record for judicial review of commission orders. R. C. 4112.06(B), however, provides little guidance for a court to determine whether the commission has timely certified a record. The subsection states in relevant part:

"Such proceedings shall be initiated by the filing of a petition in court as provided in division (A) of this section and the service of a copy of the said petition upon the commission and upon all parties who appeared before the commission. *Thereupon the commission shall file with the court a transcript of the record* upon the hearing before it.***" (Emphasis added.)

R. C. 4112.06(I) also alludes to timing in a generalized manner: "All suits brought under this section shall be heard and determined as expeditiously as possible." The "thereupon" language contained in R. C. 4112.06(B) and the "as expeditiously as possible" language in R. C. 4112.06(I) suggest that the General Assembly intended for the commission to act promptly when its orders are appealed. However, the General Assembly did not specifically set time restrictions for commission appeals in R. C. 4112.06. Therefore, the Court of Appeals erred in requiring the commission to adhere to the strict time limit of R. C. 119.12. Absent a specific reference to R. C. Chapter 119, the directory language of R. C. 4112.06(B) and (I) provides the applicable, although uncertain, standard to determine whether the commission timely certified the record to the Court of Common Pleas.

## I C.

The absence of specific time limits in R. C. 4112.06 does not grant the commission unqualified discretion as to when to certify a record for appeal. As the Court of Appeals recog-

nized, undue delay can create serious hardships. Commission orders frequently involve awards of back pay. If the commission acts dilatorily, back pay awards can amount to large sums. Moreover, the longer the delay in resolving a commission complaint, the more difficult it is to make an aggrieved party whole. Consequently, while we do not find that the 92-day period which elapsed between the commission's receipt of notice of appeal and the commission's certification of the record was unduly lengthy or prejudicial in this case, it behooves the commission to follow its legislative mandate and proceed "as expeditiously as possible."

## II A.

We must now determine whether the Court of Appeals erred in concluding that the findings of the commission were not supported by reliable, probative, and substantial evidence. R. C. 4112.05(G) establishes the evidentiary standard that must be met before the commission may issue an order requiring a respondent to cease and desist from a challenged practice or to take other affirmative action pursuant to R. C. Chapter 4112. R. C. 4112.05(G) provides:

"If upon all reliable, probative, and substantial evidence the commission determines that the respondent has engaged in, or is engaged in, any unlawful discriminatory practice, * * * the commission shall state its findings of fact and conclusions of law, * * *."

"Reliable, probative, and substantial evidence" is not defined in the statute. In previous cases, however, we have determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.,* Title 42, U. S. Code, is generally applicable to cases involving alleged violations of R. C. Chapter 4112. *Republic Steel* v. *Ohio Civil Rights Comm.* (1975), 44 Ohio St. 2d 178; *Weiner* v. *Cuyahoga Community College District* (1969), 19 Ohio St. 2d 35. Cf. *Youngblood* v. *Dalzell* (1973), 6 EPD para. 8719 (S.D. Ohio, W.D.). Thus, "reliable, probative, and substantial evidence" in an employment discrimination case brought pursuant to R. C. Chapter 4112 means evidence sufficient to support a finding of discrimination under Title VII.

## II B.

The starting point for judicial inquiry into complaints alleging disparate treatment on the basis of race is *McDonnell Douglas* v. *Green* (1973), 411 U. S. 792. *McDonnell* established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees. See *Id.* at 802 and at fn. 13.

The first step in the *McDonnell* analysis is for a complainant, or, as in the instant case, the commission, to prove a *prima facie* case of discrimination. Under *McDonnell,* as modified to fit the case of a discharge as opposed to a refusal to hire, a *prima facie* case exists when it is shown that: (1) the complainant belongs to a racial minority; (2) the complainant is qualified for the job; (3) the complainant is discharged; (4) the position from which the complainant is removed remains open. See *Id.* JAC conceded that the commission made out a *prima facie* case. The complainant is black; he was technically qualified; he was discharged; and, positions in the program remained open after the discharge.

Once a *prima facie* case is established under the *McDonnell* formula, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's***[discharge]." *Id.* The nature of this burden was further explained in *Furnco Construction Corp.* v. *Waters* (1978), 438 U. S. 567, and *Board of Trustees of Keene State College* v. *Sweeney* (1978), 439 U. S. 24, which were decided after the commission issued its findings and order. These two cases stand for the proposition that "[t]o dispel the adverse inferences from a *prima facie* showing under *McDonnell Douglas,* the employer need only 'articulate some legitimate nondiscriminatory reason for the employee's*** [discharge].' 411 U. S. at page 802." *Furnco, supra,* at page 578.

The commission's hearing examiner found that JAC "rebutted the commission's [prima facie] case with evidence that the Complainant had been dismissed from two previous employments, and had been properly suspended from the program during his***second year apprentice program. More importantly,***[JAC] put forth a valid nondiscriminatory

reason why the Complainant had been dropped: (poor) overall performance including school attendance, job attendance and grades***."

The final step of the *McDonnell* sequence permits the complainant to demonstrate that the employer's articulated reasons for the discharge are a pretext for impermissible discrimination. 411 U. S. at page 804. Pretext may be proved either by direct evidence that racial animus motivated the discharge or by discrediting the employer's rebuttal evidence. *Id.* at pages 804-05. The complainant is required to prove pretext by a preponderance of the evidence. *Texas Dept. of Community Affairs* v. *Burdine* (1981), U. S. , 67 L. Ed. 207.

The commission concluded that JAC's articulated reasons for discharging the complainant were pretextual. The hearing examiner rejected JAC's contentions that the complainant was discharged because of his poor academic and on the job performance and determined that "race was a factor in the decision to drop the complainant from the apprentice program."

We find that the Court of Appeals did not err in holding that the commission did not carry its burden of proof on the pretext issue. The commission based its conclusion that JAC discriminated against the complainant unlawfully on JAC's ambiguous standards for discharging an apprentice and the longstanding history of minority underrepresentation in the Akron-area plumbing trade prior to the implementation of the JAC affirmative action program.

A review of the record reveals that the complainant's performance in the JAC program ranged from substandard to marginally acceptable. A series of employer's evaluations indicated that the complainant was prone to excessive tardiness and absenteeism. Moreover, the commission, which urges this court to reinstate the complainant, found that JAC had adequate cause to discharge the complainant lawfully in 1974. Nevertheless, JAC gave the complainant another chance and reinstated him in 1974 on probationary status. Indeed, the complainant was either on probation or suspended for much of the time he was associated with JAC.

The commission asserts that because JAC's stated reasons

for the discharge were somewhat ambiguous, those reasons were necessarily pretextual. Although it is unclear from the record whether the complainant's discharge was specifically occasioned by overall declining grades, a low final examination grade, the failure to make up missed classes, or a combination of these factors, it is clear that JAC reasonably believed it was justified in terminating the complainant for his poor performance. See *Turner* v. *Texas Instruments, Inc.* (C.A.5, 1977), 555 F. 2d 1251. The commission's focus on JAC's ambiguous discharge criteria, which would be relevant if it were demonstrated that the criteria were not applied evenhandedly, is not pivotal in this case. Given the complainant's overall sub-par academic and work record, the discharge criteria ambiguity does not *ipso facto* imbue JAC's decision to discharge him with racial animus.

"Whether or not the employer has good cause to terminate an employee is not an issue in an employment discrimination case. Even if the employee is discharged unnecessarily or in error, the employer is not guilty of racial discrimination, unless plaintiff proves that he was treated differently on account of his race from other employees with the same work history, committing the same type infraction.***" *Williams* v. *Valley-Minter City Oil Mill* (D.C.N.D. Miss. 1978), 21 FEP Cases 1103, 1113. The commission presented no evidence to show that JAC seized upon the ambiguities in the discharge criteria to dismiss black apprentices and trainees while retaining similarly situated whites.

In light of the repeated opportunities that JAC afforded the complainant and the bona fide effort made by JAC to train and employ minority apprentices in its program, we must agree with the Court of Appeals that JAC did not discriminate against the complainant on the basis of his race. We should stress that our holding in this case merely reiterates settled legal principles.[4] We have neither extended nor constricted the law of employment discrimination hereby.

[4] The cases are legion in which an allegedly discriminatory dismissal has been found to be a dismissal for just cause. See, *e.g., Metcalf* v. *Omaha Steel Castings Co.* (D.C. Neb. 1981), 25 FEP Cases 16; *Frazier* v. *Carraway Methodist Med. Ctr.* (D.C.N.D. Ala. 1980), 24 FEP Cases 1512; *Coleman* v. *General Motors Corp.*

## III.

In *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, this court considered the scope of review available in a Court of Common Pleas when a party takes an administrative appeal pursuant to R. C. 119.12. *Conrad* acknowledged that when a Court of Common Pleas reviews an administrative order, it serves a hybrid function. The court must determine as a matter of law whether the administrative decision is supported by reliable, probative, and substantial evidence. To make this determination, however, the court must necessarily consider the evidence. *Id.* at page 111. Specifically, "where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order." *Id.* at pages 111-12.

The evidentiary standard of R. C. 119.12 and 4112.06 is the same: reliable, probative, and substantial evidence. Thus there is no basis to distinguish R. C. 119.12 and 4112.06 regarding the applicable evidentiary standard, and *Conrad* applies to appeals taken pursuant to R. C. 4112.06.

Following *Conrad,* a Court of Common Pleas "must give due deference to the administrative resolution of evidentiary conflicts." *Id.* at page 111. Due deference, however, does not contemplate uncritical acquiescence to administrative findings. The Court of Common Pleas misapprehended its hybrid function when it affirmed the commission's findings and order. The record, for reasons previously stated, does not indicate by reliable, probative, and substantial evidence that the complainant's race was a factor in JAC's decision to terminate him. The Court of Appeals properly applied the rule of *Conrad* in reversing the Court of Common Pleas.

The judgment of the Court of Appeals is reversed insofar as it applies the 30-day (formerly 20-day) record certification requirement of R. C. 119.12 to appeals taken from orders of

---

(D.C.E.D. Mo. 1980), 24 FEP Cases 1350; *Shanklin* v. *Dow Chemical Co.* (D.C.M.D. La. 1980), 494 F. Supp. 351; *Epps* v. *Continental Can Co.* (D.C.M.D. N.C. 1980), 24 FEP Cases 26; *Garner* v. *Potomac Electric Power Co.* (D.C.D.C. 1980), 23 EPD para. 31,158; *Gupta* v. *IBM Corp.* (D.C. Md. 1980), 23 EPD para. 30,936.

the Civil Rights Commission. The judgment is affirmed insofar as it denies enforcement of the commission's order.

*Judgment reversed in part*
*and affirmed in part.*

CELEBREZZE, C. J., W. BROWN, P. BROWN, LOCHER and C. BROWN, JJ., concur.

HOLMES, J., concurs in the judgment.