OPINION
Appellant, Otis Davenport, pro se, appeals a judgment of the Franklin County Court of Common Pleas affirming an order of appellee, Ohio Civil Rights Commission ("commission") dismissing appellant's complaint.
On September 28, 1993, appellant filed a charge affidavit with the commission alleging unlawful discriminatory practices by his employer, appellee Bureau of Workers' Compensation ("BWC"). Specifically, appellant alleged that BWC had discriminated against him in denying him two promotions and in suspending him from work for five days. After an investigation, the commission found probable cause to believe that BWC had acted in violation of R.C. 4112.02(A).
The commission's attempts to eliminate the alleged discriminatory practices through conciliation were unsuccessful. A complaint was issued on September 19, 1994, alleging that appellant was suspended and denied two promotions for reasons not equally applied to all persons without regard to race and sex.
Subsequently, appellant filed complaints against BWC in federal court and in the Ohio Court of Claims regarding the same issues as those raised before the commission. The commission proceedings were stayed pending the outcome of those actions. Ultimately, the federal action was dismissed on procedural grounds and appellant voluntarily dismissed the complaint in the Court of Claims. The stay was lifted and the matter was heard before a commission hearing examiner on January 12 and 13, 1999.
Subsequent to the hearing, but prior to the hearing examiner issuing a recommendation, the commission and BWC filed a joint stipulation indicating that a grievance filed on behalf of appellant by the Ohio Civil Service Employees Association, Local 11, AFSCME, AFL-CIO ("OCSEA") with regard to the five-day suspension had been settled pursuant to an agreement between the Ohio Office of Collective Bargaining ("OCB"), OCSEA and BWC. Under the terms of that agreement, BWC agreed to provide appellant forty hours of compensatory time to replace the forty hours of pay lost due to the five-day suspension and to expunge all references to the suspension from appellant's personnel record. The joint stipulation further stated that as a result of the OCB/OCSEA/BWC agreement, the commission and BWC agreed that the five-day suspension issue had become moot. The joint stipulation recognized, however, that appellant had not signed the OCB/OCSEA/BWC agreement and did not waive his right to pursue claims against BWC. (October 20, 1999 Joint Stipulation.)
Thereafter, on November 2, 1999, the hearing examiner issued findings of fact, conclusions of law, and a recommendation. The hearing examiner concluded that no discrimination had occurred with respect to either promotion sought by appellant and recommended that the complaint be dismissed. The hearing examiner did not address the suspension issue, finding it moot pursuant to the aforementioned joint stipulation.
Appellant filed written objections to the hearing examiner's report in which he addressed only issues relating to the denial of the promotions. Ultimately, the commission adopted the hearing examiner's report and dismissed the complaint.
On May 24, 2000, appellant timely appealed the commission's order to the Franklin County Court of Common Pleas pursuant to R.C. 4112.06. Upon consideration of the administrative record compiled before the commission, the common pleas court determined that the commission's finding that appellant had not been the victim of unlawful discrimination by BWC with regard to the promotions was supported by reliable, probative and substantial evidence. Accordingly, the common pleas court, on June 25, 2001, affirmed the commission's dismissal order.
Appellant now appeals and sets forth a single assignment of error, as follows:
 The Trial Court Erred in its Review of the Ohio Civil Rights Commission's Hearing Examiner's Finding of a No Probable Cause. The Appellant has shown by a Preponderance of the Evidence that he was denied PCN 13708.0 and PCN 13704.0 based upon his Race (Black) and Gender (Male) and or Sex (Male) and that he was wrongfully suspended 5 days with no pay on the basis of the Race and Gender (Black Male).
Appellant, an African-American male, began working for BWC in May 1990. At all times relevant to the instant appeal, he worked in the Department of Provider Affairs as a data entry operator. Prior to 1992, BWC processed workers' compensation claims utilizing "claims examiners," whose function was to process one particular portion of a given claim and then forward the claim to the next claims examiner for processing of a different portion of the claim. In order to improve efficiency and accessibility and accountability to claimants, BWC, in 1992, began the process of converting to a claims management system, whereby a single "claims representative" handled a particular claim from its inception until the claimant either returned to work or the claim was closed for other reasons. Because the newly created claims representative position required a more highly skilled employee, a higher pay range was established for the position. In the ensuing year, BWC created and filled some 800 to 1,000 new claims representative positions.
Because the pay range for the new claims representative classification was higher than that of the old claims examiner classification, BWC was required to follow the OCSEA Collective Bargaining Agreement ("CBA") provisions applicable to promotions. Those provisions required that promotions be awarded to the most senior, qualified, proficient applicant.
Each claims representative position was assigned a Position Control Number ("PCN"). A vacancy sheet was posted for each PCN which listed, inter alia, beginning and ending posting dates, job duties, worker characteristics and minimum qualifications. BWC employees interested in a particular PCN were instructed to submit an application form to the Human Resources office no later than the end of the posting period listed for that particular PCN. At the close of the posting period, each applicant's name was recorded on an applicant log.
The Human Resources office screened the applications to eliminate from further consideration those applicants who did not meet minimum qualifications for the position. If an applicant met the minimum qualifications, such was noted on the applicant log and then he or she proceeded to the next stage of the process — a proficiency test. The test was comprised of three parts — a math test, a writing sample, and an oral interview.
Regional Administrative Manager Amy Blateri was in charge of the proficiency testing process. She administered and scored the math and writing portions of the test and scheduled the applicants for oral interviews. All applicants who passed the proficiency test were placed in a pool of applicants who were grouped by classification series. The most senior, qualified, proficient applicant was identified by Blateri and asked to complete paperwork preparatory to his or her selection. A packet of information containing the applicant log, all applications and test results for the position, and the paperwork completed by the selected applicant was compiled by Blateri and returned to Human Resources, where it was reviewed by Labor Relations to ensure that all applicable provisions of the CBA had been followed in selecting the most senior, qualified, proficient applicant. If Labor Relations discovered a problem in either the selection process or with the selected applicant, the packet of information was sent back to Human Resources for clarification and/or further processing. If, however, Labor Relations approved the selected applicant, the applicant was then sent a letter notifying him or her of their selection, job assignment and starting date.
An applicant was required to submit a separate application for each PCN posted. Further, an applicant was required to take a proficiency test (even if the applicant had already taken and passed a previous test) for each PCN if the applicant had not taken the test within the previous two weeks. According to BWC's unwritten policy, developed to achieve consistency in the processing of applications, the "shelf life" of each examination was two weeks. Blateri consistently measured the two-week "shelf life" from the date of the last examination passed to the date she received the packet of information from Human Resources regarding qualified timely applicants. The period of time between the closing of the posting period and the transmission of the packet to Blateri could vary. If, on the other hand, an employee's applications for several different positions were reviewed during the same "shelf life" of the examination, the same examination would be used for all the positions — at least as far as the writing sample and math test were concerned. An employee might receive several different scored interviews within that two-week period with different interviewers.
The posting period for PCN 13708 ran from May 10 to May 19, 1993. Appellant timely applied for PCN 13708 and took and passed the proficiency test on May 21, 1993. Blateri initially identified him as the most senior, qualified, proficient applicant, gave him the name of his new supervisor, and asked him to complete a civil service application form and a form letter introducing himself to providers.
The packet of information containing appellant's selection and materials regarding the other applicants for PCN 13708 was forwarded to and reviewed by Labor Relations Officer, Kathleen Raparelli. In reviewing the information, Raparelli noticed that the applicant log listed Brenda Boley, a caucasian female, as an applicant. As the log contained no other information regarding the disposition of Boley's application, Raparelli checked Boley's seniority date and discovered that she was more senior than appellant, but through some error had never been afforded the opportunity to take a proficiency test. In the packet of materials, Raparelli discovered Boley's unsigned, undated application. Although Raparelli had no personal knowledge as to whether or not Boley submitted a timely application, she deduced that Boley's application must have been timely submitted because her name was included on the applicant log, which typically included only names of applicants who timely filed applications.
Raparelli made arrangements with Human Resources for Boley to be given the proficiency test. Boley took and passed the proficiency test on June 9, 1993. Subsequently, Raparelli offered the position to Boley as she believed she was required to do under the terms of the CBA, as Boley was the most senior, qualified, proficient applicant.
Blateri testified at her deposition that Boley's name was not on the applicant log she received for PCN 13708, which indicated to Blateri that Boley had not timely applied for the position. When confronted at the commission hearing with the applicant log containing Boley's name, Blateri averred that she assumed a revised applicant log with Boley's name must have been created by Human Resources after appellant had been identified as the successful applicant. She further testified that she did not clearly remember whether or not Boley's name was on the "original" applicant log, but assumes it was not because she does not think she made a mistake in failing to test Boley. She admitted, however, that she could have made such a mistake, given that she was the only person responsible for processing hundreds of claims representative applications in 1993.
According to appellant, he was told that completion of the civil service application was the final step before being awarded the position and was never told that the determination was subject to review by Labor Relations. He admitted, however, that he did not receive a written communication stating that he had been selected for the position. Sometime after being notified by Blateri that he was the most senior, qualified, proficient applicant for the position, he was told by Blateri, Raparelli, and Provider Affairs Manager, Pat Thompson, that another application for PCN 13708 had been discovered "in the back room up underneath the table" (Tr. 50), and, as a result, he would not be given the position.
The posting period for PCN 13704 ran from May 17 to May 26, 1993. Appellant timely applied for the position. Blateri received the packet of information for the position more than two weeks after appellant had last passed the proficiency test on May 21, 1993. In accordance with established procedures regarding the "shelf life" of a proficiency test score, Blateri notified appellant that he would have to take another proficiency test in order to be considered for the position. Thompson's executive secretary, Julia Dent, also contacted appellant to schedule an examination. According to both Blateri and Dent, appellant refused to take another test. In accordance with BWC's practice of requesting a letter declining an examination, both Blateri and Dent requested such a letter from appellant. Appellant never provided one. Dent noted on the "interview summary" for PCN 13704 that appellant had "refused to participate interview process — declined without letter." (Joint Exhibit 66.) Ultimately, the position was awarded to Mary Grubb, a caucasian female with less seniority than appellant.
Appellant filed grievances pursuant to the CBA regarding both PCN 13704 and 13708. Both grievances were resolved in BWC's favor.
We first set forth the standard of review applicable to appeals from the commission. The common pleas court must affirm the commission's decision if the court finds that the decision is supported by reliable, probative, and substantial evidence on the record. R.C. 4112.06(E); Plumbers Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm. (1981), 66 Ohio St.2d 192, paragraph two of the syllabus. Absent a legally significant reason for discrediting certain evidence relied upon by the commission, the common pleas court must afford due deference to the commission's resolution of evidentiary conflicts because the commission has the opportunity to observe the demeanor of the witnesses and weigh their credibility. Cleveland Civil Serv. Comm. v. Ohio Civ. Rights Comm. (1991), 57 Ohio St.3d 62, 65.
The role of an appellate court in reviewing the judgment of the common pleas court under R.C. 4112.06 is to determine whether the common pleas court abused its discretion in finding that there was reliable, probative, and substantial evidence to support the commission's findings. Ohio State Univ. College of Social Behavioral Sciences v. Ohio Civil Rights Comm. (1989), Franklin App. No. 88AP-1072. An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Jackson v. Ohio Civil Rights Comm. (1989), 50 Ohio App.3d 13, 15.
Having set forth the applicable standard of review, we now examine the law applicable to discrimination cases. Racial and sexual discrimination in employment is proscribed by R.C. 4112.02(A), which provides that:
It shall be an unlawful discriminatory practice:
 (A) For any employer, because of the race, [or] sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.
In order to prevail in a disparate treatment[1] employment discrimination case such as the one before us, the plaintiff must prove discriminatory intent. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 583. Discriminatory intent may be proven through either direct or indirect evidence. Gismondi v. M T Mortgage Corp. (1999), Franklin App. No. 98AP-584. The plaintiff may establish a prima facie case directly by presenting evidence of any nature to show that the adverse employment action taken by the employer was more likely than not motivated by discriminatory intent. Id., citing Mauzy, supra, at 583. The plaintiff may establish a prima facie case of intentional discrimination indirectly upon application of the analytical framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 93 S.Ct. 1817. Id. Accordingly, in the absence of direct evidence of discrimination, the plaintiff may raise an inference of discriminatory intent by establishing that: (1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position held; and (4) comparable, nonprotected persons were treated more favorably. Goad v. Sterling Commerce, Inc. (2000), Franklin App. No. 99AP-321.
If the plaintiff establishes a prima facie case of discrimination, a presumption of intentional discrimination is raised. Mauzy, supra, at 584. The burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its action. Id. at 585. If the employer carries its burden, the plaintiff must then be afforded an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were a pretext for discrimination. Ohio Civil Rights Comm. v. Kent State Univ. (1998),129 Ohio App.3d 231, 246. The plaintiff may not satisfy this burden merely by showing that the employer's proffered reasons are unworthy of credence. Id., citing St. Mary's Honor Ctr. v. Hicks (1993), 509 U.S. 502,520, 113 S.Ct. 2742, 2754. The plaintiff always bears the ultimate burden of persuasion and may satisfy the burden of proving pretext by proving the falsity of the proffered reason in addition to the existence of unlawful discrimination. Id., see, also, Ohio Univ. v. Ohio Civil Rights Comm. (1996), Athens App. No. 96CA1721. "[N]othing in law would permit [the court] to substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable." Id., quoting Hicks, supra, at 514-515.
In this case, the commission determined that BWC had articulated a legitimate, nondiscriminatory reason for not promoting appellant to claims representative under PCN 13708, i.e., that appellant was not the most senior qualified applicant for the position. The commission also determined that BWC had articulated a legitimate nondiscriminatory reason for not promoting appellant to claims representative under PCN 13704, i.e., that appellant had refused to participate in the selection process when he declined to take the proficiency test for that position. The commission further determined that appellant failed to demonstrate that BWC's stated reasons were a pretext for discrimination. The common pleas court determined that the commission's findings were supported by reliable, probative, and substantial evidence and were in accordance with law.
In his brief, appellant argues that the evidence of record does not support the commission's finding that BWC articulated legitimate, nondiscriminatory reasons for failing to promote appellant to claims representative under either PCN 13708 or PCN 13704.
More specifically, with regard to PCN 13708, appellant contends that the evidence establishes that the applicant log was falsified in order to allow Boley to test for that position in an effort to preclude him, an African-American male, from being awarded the position. In support of his contention, appellant points to Boley's unsigned, undated application as evidence that she did not timely apply for the position. Appellant also relies upon Blateri's deposition testimony, wherein she averred that Boley's name was not on the "original" applicant log.
The record from the commission hearing contains only one applicant log for PCN 13708. Boley's name appears on that log. Blateri testified that she did not remember Boley's name being on the applicant log, but only assumes it was not because she does not think she mistakenly failed to test Boley. Accordingly, she assumes that a "revised" log containing Boley's name was created by the Human Resources office after appellant was selected for the position. However, Blateri admitted that Boley's name could have appeared on the applicant log and that she made a mistake in failing to schedule her for testing, as she was the only person responsible for processing hundreds of claims representative applications.
As to appellant's contention that Boley failed to submit a timely application (as her application was unsigned and undated), appellant admitted at the commission hearing that he has no proof that Boley's application was not timely submitted. Further, Raparelli testified that although Boley's application was unsigned and undated, she surmised that the application must have been timely filed because Boley's name was on the applicant log which typically contains only the name of applicants who have filed in a timely manner. Once Raparelli realized that Boley was more senior than appellant, she arranged for her to take the proficiency test. After Boley passed the test, Raparelli offered her the position in accordance with the terms of the CBA.
As the above demonstrates, there was conflicting testimony presented at the hearing regarding the processing of Boley's application. The commission recognized this conflict and resolved the issue in favor of BWC:
 There was conflicting testimony regarding the processing of Boley's application; however, I resolved the conflict in favor of the version offered by Raparelli. Based on her version, there was no deviation from normal procedures. Normal procedures were followed once it was discovered that Boley's application had not been processed. Even if her version of what happened was incorrect, I find that it was not intentional. She may have been mistaken. An honest, mistaken belief is not evidence of discrimination. [11/2/99 Hearing Examiner's Report at 16.]
With regard to PCN 13704, appellant contends that he was not required to take another proficiency test because the May 26, 1993 posting deadline for that position was less than two weeks after he passed the proficiency test on May 21, 1993; accordingly, his May 21, 1993 test results were applicable to PCN 13704. Appellant further contends that he was never informed that he had to take another proficiency test and never refused to take the proficiency test.
As noted previously, Blateri testified that pursuant to BWC policy, if more than two weeks elapsed between the time an applicant last passed the proficiency test and the time Blateri received the application packet, the applicant was required to take the test for the new position. She further testified that in appellant's case, more than two weeks elapsed between his successful completion of the test on May 21, 1993, and the time she received the application packet for PCN 13704. In accordance with established BWC procedures, she informed appellant that he was required to take another test. He refused. He also failed to comply with her request that he provide written confirmation that he refused to take another test. Dent also testified that appellant refused to take another test and did not provide written confirmation of his refusal. Dent noted appellant's refusal to participate in the interview process on the interview summary.
There was conflicting testimony with regard to the processing of plaintiff's application for PCN 13704 which required the commission to make credibility determinations. The commission resolved the issue in favor of BWC:
 Respondent counted the fourteen days from the date the application packet was received by Blateri. Blateri received the packet more than two weeks after [appellant] had take and passed the proficiency examination. Therefore, under [BWC's] policy, he was required to take another proficiency test. [11/2/99 Hearing Examiner's Report at 18.]
The common pleas court reviewed all the evidence and found that reliable, probative, and substantial evidence supported the commission's finding that BWC's stated reasons for not promoting appellant to claims representative under either PCN 13708 or 13704 positions were reasonable and were not a pretext for discrimination. Upon review of the record, we cannot conclude that the common pleas court abused its discretion in so finding.
Finally, we address appellant's contention that he was the subject of racial discrimination in receiving a five-day suspension in April 1993.
As previously noted, the commission and BWC filed a joint stipulation in October 1999 whereby BWC provided appellant with forty hours of compensatory leave to replace the forty hours of pay appellant lost as the result of the five-day suspension and expunged all references to the suspension from appellant's personnel record. Further, the commission and BWC agreed that the suspension issue was moot. Citing the joint stipulation, the hearing examiner determined that the suspension issue was moot and did not address it in his report. Although appellant filed objections to the report, he did not object to the hearing examiner's treatment of the suspension issue. Despite such failure, appellant attempted to resurrect this claim before the common pleas court and now raises the issue before this court.
The issue of the suspension was not properly before the common pleas court and is not properly before this court. R.C. 4112.06(C) provides:
 An objection that has not been urged before the commission shall not be considered by the court, unless the failure or neglect to urge such objection is excused because of extraordinary circumstances.
As the statute plainly states, the common pleas court may not consider an objection that was not raised before the commission, unless the failure to do so is excused due to extraordinary circumstances. As appellant has failed to demonstrate extraordinary circumstances, the issue of his five-day suspension was not properly before the common pleas court and may not be considered by this court.
For the foregoing reasons, this court concludes that the common pleas court did not abuse its discretion in finding that the commission's determination that BWC did not engage in unlawful discrimination in failing to promote appellant to either of the claims examiner positions was supported by reliable, probative and substantial evidence.
Accordingly, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.
[1] There are different types of discrimination in employment settings: disparate treatment (intentional discriminatory treatment of an employee) and disparate impact (facially neutral employment policy is applied in a discriminatory fashion, without regard to the employer's intention). Ohio Civil Rights Comm. v. Kent State Univ. (1998),129 Ohio App.3d 231, 245, fn. 10, citing Hazen Paper Co. v. Biggins (1993), 507 U.S. 604, 609, 113 S.Ct. 1701, 1705.