**OBU**

v.

**OHIO DEPARTMENT OF AGING.**

2002-Ohio-4141.]

Court of Claims of Ohio.

No. 2000–05967.

Decided July 26, 2002.

132

Cox, Stein & Pettigrew Co., L.P.A., and Grady L. Pettigrew, Jr., for plaintiff.

Betty D. Montgomery, Attorney General, and Anne Berry Strait, Assistant Attorney General, for defendant.

HOLLY TRUE SHAVER, Magistrate.

{¶ 1} This matter was tried to a magistrate of the court on the issue of liability. Plaintiff asserts that his termination from defendant's employment was based upon racial and religious discrimination. Plaintiff also asserts a claim of "professional defamation."

{¶ 2} Plaintiff, Kwanz M. Obu, an African–American Muslim, was employed by defendant from 1990 to 1999 as a program oversight assistant. His job duties included developing policies and procedures for the collection of aggregate statistical data with regard to services that are provided to the elderly. Plaintiff was a member of defendant's collective bargaining unit.

{¶ 3} In December 1998, defendant issued a policy making it an offense subject to progressive discipline for an employee to make in excess of 100 local telephone calls per month. The policy took effect on January 29, 1999. Telephone records showed that plaintiff's monthly calls for October, November, and December 1998, and January 1999 exceeded 100 calls, ranging from 115 to 172 calls per month. Paul Gideon, plaintiff's supervisor, advised plaintiff of the new policy twice in January 1999, but plaintiff's monthly calls for both February and April also exceeded 100 calls.

{¶ 4} On February 22, 1999, plaintiff sent an e-mail to Gideon requesting leave without pay for personal reasons from February 23–26, 1999. Gideon, however, was on vacation at the time plaintiff made the request. Gideon testified that the proper procedure to request leave was to complete a leave request form and either advise him or another manager verbally or via e-mail prior to taking the leave. The request would subsequently be approved if the employee had enough accrued leave time. Plaintiff did not seek approval either verbally or by e-mail from another manager before taking the leave without pay. After plaintiff returned to work, he was assessed a five-day fine due to his failure to follow proper procedure. Plaintiff filed a grievance regarding the fine, and the grievance was denied.

{¶ 5} On March 18, 1999, Gideon wrote a memorandum to Carla Dowling–Fitzpatrick, chief legal counsel for defendant, regarding his suspicions that plaintiff was using his computer at work to conduct an outside business. Plaintiff had previously spoken with Gideon about starting a business venture to rehabilitate Housing and Urban Development ("HUD") dwellings in the Columbus area. Gideon noticed that plaintiff had been using his leave balances at a very high rate beginning in January 1999. In addition, Gideon had seen what appeared to be a rental agreement on plaintiff's computer screen, a document that would not have been associated with plaintiff's job duties.

{¶ 6} In May and June 1999, an investigation was conducted during which plaintiff's computer was monitored for a period of 18 working days. The investigation revealed that plaintiff's "internet history" file had been set to zero instead of the standard default of 20 days and that software containing a three-dimensional home-design program had been downloaded onto plaintiff's computer. Plaintiff's computer also contained a large amount of information from the HUD website and other home-improvement sites, lease agreements, rental applications, articles of incorporation, plat maps, real estate tax information, a Power Point presentation regarding "Pyramid to Houses," and sample business cards. In addition, Dowling–Fitzpatrick found business cards on plaintiff's desk with his name and the title "Pyramid to Houses."

{¶ 7} During the period of monitoring, plaintiff used the internet from 20 minutes to 3 hours and 24 minutes per day, averaging 73.5 minutes of internet use per day. Defendant's computer and internet policies prohibited use of the internet for operating a business for personal gain, and stated that unauthorized use of computer resources would be subject to legal or disciplinary action. Employment records show that plaintiff received defendant's policy regarding computer usage on February 18, 1998, internet usage on June 29, 1998, and telephone usage on February 17, 1999. Both Gideon and Sara Abbott, another of plaintiff's supervisors, testified that the information found during the investigation did not relate to plaintiff's work assignments.

{¶ 8} Plaintiff was terminated from defendant's employment on July 26, 1999, for the following reasons: (1) failure to follow directives, policies, or procedures; (2) falsifying payroll time sheets; (3) misuse of state equipment or property for personal use; (4) violation of R.C. 124.34; and (5) failure of good behavior. Plaintiff's Step–3 grievance about his termination was heard on August 12, 1999. On August 26, 1999, a hearing officer denied the grievance and found that management had just cause for terminating plaintiff.

{¶ 9} On August 11, 1999, plaintiff filed a charge of racial discrimination with the Ohio Civil Rights Commission. After its investigation, the commission determined that it was not probable that defendant had engaged in practices unlawful under R.C. Chapter 4112 and ordered the case dismissed.

{¶ 10} On March 5, 2001, an arbitration hearing was held between plaintiff's union and defendant on the issue of whether plaintiff was removed from defendant's employment for just cause. On June 18, 2001, the arbitrator found that defendant's discharge of plaintiff was reasonable and was supported by the evidence. The arbitrator also found that there was no substantial evidence of racial discrimination and denied plaintiff's grievance.

{¶ 11} Plaintiff asserts that he was terminated from defendant's employment on the basis of racial and religious discrimination.

{¶ 12}   He also states that he was treated differently from other employees with regard to computer use and that a fellow employee sold "Mary Kay" cosmetics at work and was not reprimanded.   He further contends that all of his computer use was related to his job with defendant.   Defendant maintains that plaintiff was terminated for just cause and that his claims are barred by the binding arbitration provision of the collective bargaining agreement.

{¶ 13}   Initially, the court finds that plaintiff's claims are not precluded by the collective bargaining agreement, since the claims are independent of R.C. Chapter 4117.   See *Myers v. Riley* (1994), 98 Ohio App.3d 133, 648 N.E.2d 16; *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 572 N.E.2d 87.   Therefore, the court makes the following determination.

{¶ 14}   Plaintiff first asserts claims for discrimination based upon race and religion.   R.C. 4112.02 provides:

{¶ 15}   "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 16}   The Supreme Court of Ohio has stated that "[f]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128. Absent direct evidence of racial discrimination, plaintiff must prove, by a preponderance of the evidence, a prima facie case of racial discrimination. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668.   If a plaintiff is able to demonstrate a prima facie case, defendant need only show a legitimate nondiscriminatory reason for its actions.   Once the employer meets its burden of proof, plaintiff-employee must prove that defendant's reason was only a pretext for discrimination or was unworthy of credence.   *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 17}   Plaintiff has not brought forth direct evidence of racial discrimination.   Thus, in order for plaintiff to prove a prima facie case of racial discrimination, he must show that (1) he was a member of a protected class, (2) he was discharged, (3) he was qualified for the position, and (4) either he was replaced by a person outside the class or a comparable non-protected person was treated better.   See *Sivarajan v. Nationwide Life Ins. Co.* (June 16, 1998),

Franklin App. No. 97APE10–1426, 1998 WL 318873, discussing *Henderson v. Cincinnati Bell Long Distance, Inc.* (1996), 113 Ohio App.3d 793, 796, 682 N.E.2d 41, and *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 582. Plaintiff satisfies the first three factors of the prima facie case. He is a member of a protected class (African–American), he was qualified for the position that he held from 1991–1999, and he was terminated. However, plaintiff did not present any evidence regarding who replaced him after he was terminated. Therefore, plaintiff must prove that a comparable non-protected person was treated better than he was.

{¶ 18} Plaintiff alleges that other employees used defendant's computers for personal business, including using the internet, and having personalized "screen savers" and "wallpaper" on their computers. Judith Walens–Webber, a data administrator manager 1, testified that she had worked for defendant for almost 21 years. She stated that "Little Brother" software was used to monitor internet use of about one-third of the agency's employees during the investigation of plaintiff. She examined other employees' internet use and did not find anything that compared with plaintiff's use. An example of what she found was employees checking the news headlines for about two minutes and then logging off. She further testified that screen savers could be approved by the computer department if an employee had requested it, but that the computer department needed to investigate whether the screen saver complied with licensing agreements and whether it was compatible with defendant's network before it would be approved.

{¶ 19} Dowling–Fitzpatrick testified that the Ohio Civil Rights Commission had requested a review of three white male employees' computers for a comparison to plaintiff's. She investigated their computer use and found that they were not using the internet for personal matters. While she discovered that some other employees had been using personalized screen savers and wallpaper on their computers, she found nothing of the magnitude of plaintiff's unauthorized computer use. After the investigation, employees were told to remove the personalized screen savers and wallpaper from their computers. Based upon the evidence presented at trial, the court finds that there were no comparable non-protected people engaging in the same behavior as plaintiff.

{¶ 20} Plaintiff also asserts that Elizabeth Wright sold Mary Kay cosmetics during working hours. Wright testified that she occasionally had sold cosmetics but only at lunchtime and on breaks. She further stated that due to her position as the labor relations administrator in the human resources department, she was very careful to sell cosmetics only at those times. Millie Milam testified that there had been no reports of Wright selling cosmetics during working hours. The court concludes that Wright's actions of selling cosmetics on her lunch hour and during breaks does not compare with the level of plaintiff's unauthorized

computer use. Therefore, plaintiff has failed to prove a prima facie case of racial discrimination.

{¶ 21} Plaintiff also asserts a claim for discrimination on the basis of religion. To establish a prima facie case of religious discrimination under Title VII, plaintiff must prove that (1) he has a bona fide religious belief that conflicts with an employment requirement, (2) he informed the employer of this belief, and (3) he was disciplined for failure to comply with the conflicting employment requirement. *Philbrook v. Ansonia Bd. of Edn.* (C.A.2, 1985), 757 F.2d 476. A plaintiff may also establish a prima facie case directly by presenting evidence that the employer more likely than not was motivated by discriminatory animus. *Mauzy v. Kelly Services, Inc.* (1996), 75 Ohio St.3d 578, 586–587, 664 N.E.2d 1272.

{¶ 22} Plaintiff alleged that when he changed his name from Edgar Skinner to Kwanz Obu in 1991, he received some derogatory e-mails from other employees, namely, John Huffman. Huffman stated that his e-mail was intended as a joke. Plaintiff also asserted that various employees teased him occasionally about not eating meat. However, the court finds that even if the e-mail and comments were made in a derogatory manner, plaintiff has brought forth no evidence to show that he was ever disciplined as a result of his religious beliefs. Therefore, plaintiff has failed to prove his case of religious discrimination by a preponderance of the evidence.

{¶ 23} As for plaintiff's claim of "professional defamation," plaintiff contends that defendant published false information about him, including false statements about job performance, possible criminal charges, his personal integrity, hours worked and the unauthorized use of state owned assets, including telephone and computer use. The court finds that plaintiff violated defendant's computer and telephone policy. Moreover, plaintiff's testimony that his computer use was related to his employment with defendant was not credible. Therefore, plaintiff has not proven by a preponderance of the evidence that any statements made by defendant's employees were untrue. Plaintiff has failed to state a prima facie case of defamation.

{¶ 24} In the final analysis, plaintiff has failed to prove any of his claims by a preponderance of the evidence. Judgment is recommended in favor of defendant.

Judgment for defendant.