{¶ 1} Appellant, Patty Daniels, appeals from the June 7, 2002 judgment entry, in which the Trumbull County Court of Common Pleas granted summary judgment in favor of appellee, Vienna Township Board of Trustees.
 {¶ 2} Appellant filed a complaint on May 31, 2001, alleging sexual discrimination/harassment, breach of implied contract, defamation, breach of public policy and negligence. Appellant worked as a police officer for appellee and claimed that she was subject to sexual discrimination and harassment while in the course and scope of her employment. She was hired by her supervisor, who was also related to her by marriage. Appellee filed its answer on June 16, 2001. On May 6, 2002, appellee filed a motion for summary judgment. On June 3, 2002, appellant filed a response in opposition to appellee's motion for summary judgment. On June 7, 2002, the trial court granted appellee's motion for summary judgment. It is from that entry that appellant timely filed the instant appeal and now assigns a single assignment of error[1]:
 {¶ 3} "The trial court abused its discretion in granting appellee's [Civ.R.] 56 motion[.]"
 {¶ 4} In her lone assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment.
 {¶ 5} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 6} The Supreme Court of Ohio stated that:
 {¶ 7} "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifyingthose portions of the record which demonstrate the absence of a genuineissue of fact on a material element of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. ***" (Emphasis sic.) Dresher v. Burt (1996), 75 Ohio St.3d 280, 296.
 {¶ 8} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).
 {¶ 9} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "*** we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 10} Appellant claims that she was discriminated against based on her gender. A review of her brief and her memorandum in opposition to the summary judgment motion below reveals that her sex discrimination claim is based on her view that she received disparate treatment in disciplinary matters and professional speech and conduct.
 {¶ 11} When an individual brings a discrimination claim in Ohio for violating R.C. 4112.02, the Supreme Court of Ohio has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S. Code, is generally applicable * * *." Plumbers Steamfitters Joint Apprenticeship Commt. v. OhioCiv. Rights Comm. (1981), 66 Ohio St.2d 192, 196.
 {¶ 12} R.C. 4112.02(A) provides as follows:
 {¶ 13} "It shall be an unlawful discriminatory practice:
 {¶ 14} "(A) For any employer, because of the * * * sex * * * of any person, to discharge without just cause, * * * or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 15} The starting point for judicial inquiry into a complaint alleging discrimination is McDonnell Douglas v. Green (1973), 411 U.S. 792. "McDonnell established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees." Plumbers, supra, 66 Ohio St.2d at 197. The first step is for a complainant to prove a prima facie case of discrimination. The basic elements of a discrimination case are that: (1) the employee belongs to a protected class; (2) the employee is discharged; (3) the employee is qualified for the position; and (4) the employee is replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Id.
 {¶ 16} Appellant has the burden of establishing a prima facie case of discrimination in violation of R.C. 4112.02(A) by a preponderance of the evidence. Omobien v. Ohio Civ. Rights Comm. (1993), 89 Ohio App.3d 100,103-104. If appellant succeeds in proving a prima facie case, the burden shifts to appellee to articulate some legitimate, nondiscriminatory reason for the employee's termination. Plumbers, 66 Ohio St.2d at 197. If appellee carries its burden, appellant must demonstrate that the reasons offered by appellee were not the true reasons, but were a pretext for discrimination. Id. at 197-198.
 {¶ 17} In the case at bar, although the trial court did not state its specific reasons for granting appellee's motion for summary judgment, it is our determination that appellant failed to present any direct evidence of discrimination to raise a genuine issue of material fact either on sex discrimination or harassment in the workplace.
 {¶ 18} Appellant asserted that a male officer told her in front of her colleagues that he wanted her to sit on his face. She further stated that the chief of police told her that a woman belongs in the back with her mouth shut. She claimed that while she was undergoing firing range training, she was hit in the neck by a hot shell casing which caused a male officer to ask another male officer what he did to her neck. Appellant also alleged that a male officer refused to ride with her for road training "because of the rumors and feeling uncomfortable." She declared that she was suspended from outside duty after a meeting with the chief of police and her female supervisor at which she was accused of "wearing shorts with her ass hanging out" and looking "like a slut and a whore," while off-duty. Lastly, she avowed that she was counseled by her supervisor who told her that she was a "pretty girl," that things like this would happen and that she would have to learn how to handle it.
 {¶ 19} Appellee on the other hand presented evidence in the form of affidavits, which revealed that during appellant's course of her training and probationary period, there were numerous incidents reported by third parties to appellant's female supervisor and the chief of police regarding appellant's conduct and dress. One such instance occurred when appellant was assigned to work security with Officer Robin Logan ("Officer Logan") at the Squaw Creek Country Club on May 5, 2001. During that assignment, Officer Logan observed appellant speak to the general manager of the country club "in a very flirtatious manner." Officer Logan also averred that appellant asked the general manager his age and whether he was married. According to Officer Logan, appellant was concerned with her hair and makeup and how she looked, and she wondered if the general manager had money. Officer Logan recalled that the general manager gave appellant his business card and told her to call him sometime. Appellant showed the card to Officer Logan. Officer Logan further opined that appellant did not act professionally in her duty as a police officer on May 5, 2001, as she was more concerned with getting a date with the general manager of the Squaw Creek Country Club. In addition to this incident, there was another occasion where appellant was overheard making inappropriate remarks while in uniform.
 {¶ 20} Moreover, on May 7, 2001, appellant's supervisor and the chief of police met with her to notify her of the pending internal investigation as to her conduct. At a later date, appellant arrived for the weapons qualification wearing sandals, which was inappropriate footwear for that assignment. Appellant was supposed to report for mandatory training, but she informed her supervisor that she was represented by counsel and when the chief of police further questioned appellant as to the situation, appellant requested to be removed from the active roster until further notice. Therefore, based on a review of the record, there was no evidence that appellant was suspended from her position.
 {¶ 21} Additionally, it is our view that none of the claimed statements were discriminatory on their face. Specifically, isolated or ambiguous discriminatory remarks are insufficient to support a claim for discrimination. Gagne v. Northwestern Natl. Ins. Co. (C.A. 6, 1989),881 F.2d 309, 314. In order for the comments to support a claim for discrimination, they must reveal discriminatory animus by the speaker. Id. After reviewing appellant's allegations, it is our position that the comments and actions did not reveal any hostility or animus toward women. Some of the statements appellant mentioned were from her supervisor who was related to her and also was a woman.
 {¶ 22} It is our determination that appellant provided evidence of the first element of her prima facie case, i.e. that she belongs to a protected class. However, she did not establish that she was discharged. Appellee presented evidence that appellant asked to be removed from the active roster. Even if appellant had been discharged, her own affidavit testimony revealed that she was not qualified for the position. Appellee testified that on thousand five hundred hours of "on the road" training was required to be certified, and as of May 23, 2001, she had only completed two hundred hours of the training. Hence, she was not qualified for her position at the time of her termination and did not satisfy this element. She also presented no evidence to raise a genuine issue of material fact on that element. Finally, appellant did not provide the court with evidence that she was replaced by, or that her discharge permitted the retention of, a person not belonging to the protected class. Therefore, appellant cannot establish a prima facie case that she was terminated because of her gender. We conclude that appellant has not created a genuine issue of fact regarding sexual discrimination.
 {¶ 23} We now turn our attention to the argument of hostile work environment harassment which appellant alleged in the complaint but failed to address in her brief. We note that a plaintiff must demonstrate that the harassment was unwelcome, was based on sex, was sufficiently severe or pervasive to affect the terms or conditions of employment, and was committed by a supervisor or the employer knew or should have known of the harassment. Hampel v. Food Ingredients Specialties, Inc. (2000),89 Ohio St.3d 169, 176-177.
 {¶ 24} "* * * [N]ot all workplace conduct that may be described as `harassment' affects a `term, condition, or privilege' of employment within the meaning of Title VII." Meritor Svgs. Bank v. Vinson (1986),477 U.S. 57, 67. Simple teasing, offhand remarks, and isolated incidents that are not extremely serious will not amount to discriminatory changes in the terms and conditions of employment. Faragher v. Boca Raton
(1998), 524 U.S. 775, 788. In Burnett v. Tyco Corp. (C.A. 6, 2000),203 F.3d 980, 981, the Sixth Circuit dealt with a case where the personnel manager (1) placed a pack of cigarettes inside an employee's tank top and brassiere strap, (2) gave the employee a cough drop and stated that since she lost her cherry, he was giving her one to replace the one she lost, and (3) when viewing the employee's sweater that read "Deck the malls," he started saying, "dick the malls, dick the malls, I almost got aroused." In that case, the Sixth Circuit affirmed the granting of summary judgment in favor of the employer. Id.
 {¶ 25} In the instant matter, it is our view that appellant has failed to demonstrate a claim for hostile environment harassment. None of the comments appellant complains of rise to the level of harassment based on the foregoing case law.
 {¶ 26} Accordingly, based on the documentary evidence presented, appellant did not establish all the prima facie elements of a discrimination claim and appellee articulated legitimate, non-discriminatory reasons for the decision, which did not prove to be pretextual. Even construed in a light most favorable to appellant, the evidence did not create a genuine issue of fact regarding sexual and/or gender discrimination or harassment. Therefore, the trial court did not err in granting summary judgment on the issue of sexual and/or gender discrimination.
 {¶ 27} For the foregoing reasons, appellant's sole assignment of error is not well taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Judgment affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] The appeal only raises the alleged sexual discrimination/harassment claim and not the causes of action for the breach of implied contract, defamation, breach of public policy and negligence.