**JORDAN, Appellant,**

v.

**OHIO CIVIL RIGHTS COMMISSION et al., Appellees.**

[Cite as *Jordan v. Ohio Civ. Rights Comm.*, 173 Ohio App.3d 87, 2007-Ohio-3830.]

Court of Appeals of Ohio,
Twelfth District, Fayette County.

No. CA2006–08–031.

Decided July 30, 2007.

90

Harris, McClellan, Binau & Cox and Mark S. Coco, for appellant.

Marc Dann, Ohio Attorney General, and Stephanie Bostos Demers, Senior Deputy Attorney General, for appellee Ohio Civil Rights Commission.

WALSH, Judge.

{¶ 1} Plaintiff-appellant, John Jordan, D.D.S., appeals the decision of the Fayette County Court of Common Pleas adopting a finding by the Ohio Civil Rights Commission of sexual harassment and constructive discharge. We affirm the decision of the trial court in part and reverse it in part.

{¶ 2} In early 2001, appellant interviewed Teresa Smith for a position as a chair-side dental assistant ("CSDA"). At the interview, Smith informed appellant

that she had two years' experience as a CSDA with a dental practice in Columbus. Appellant offered her the position, and Smith began employment on February 19, 2001. On April 2, 2001, Smith terminated the employment by quitting.

{¶ 3} On April 6, 2001, Smith filed a charge of discrimination with the Ohio Civil Rights Commission, alleging that appellant had committed unlawful sexual discrimination, retaliation, and constructive discharge against her. Following an investigation into the allegations, the commission issued a formal complaint against appellant. Appellant issued a response to the complaint and, thereafter, a hearing was held before an administrative law judge ("ALJ").

{¶ 4} At the hearing, Smith testified that on her first day, she struggled to adjust to appellant's fast-paced dental practice. Smith stated that she apologized to appellant for her mistakes, but appellant responded that it was all right and stated, "Eventually you'll know what I'm thinking * * * but then you'll probably want to slap me." According to Smith, appellant continually made sexually oriented comments toward her for the first week of her employment.

{¶ 5} Smith testified that appellant constantly followed her around the office and, on the second day, grabbed her from behind and pulled her against him. Appellant stated to Smith that his wife was going on vacation and suggested that Smith should meet him at a restaurant called The Dock in Chillicothe. Smith also testified that appellant frequently invited her over to his home to show her his horses and described to her in detail the horses' breeding habits. According to Smith, appellant repeatedly suggested that she "needed a sugar daddy" and that he had several friends who would "drop money" on her if she had sex with them.

{¶ 6} Additionally, Smith testified that appellant talked to her about taking Viagra and said that the "prostitutes in Vegas hated when men took Viagra because it wore them out." She claimed that appellant stated that "he couldn't tell anything about [her] body type because he hadn't seen [her] undressed." Smith testified that appellant wanted to show her nude photos from the Internet and told patients that she used to work in a strip club.

{¶ 7} Smith claimed that work was very uncomfortable because she did not know how to handle appellant's comments. As a result, beginning on her second day of employment, Smith kept a contemporaneous journal of the comments and actions that appellant made toward her. On Tuesday of the second week, Smith testified that a patient commented that she was left-handed. Appellant responded to the patient that "left-handed women make better lovers." Following this incident, Smith confronted appellant for embarrassing her in front of the patient. She informed him that she did not appreciate his sexually oriented comments and asked him to stop making those types of comments.

{¶ 8} According to Smith, within 30 minutes of the confrontation, she noticed a drastic change in appellant's treatment of her, and the work environment became totally different thereafter. Appellant was no longer encouraging and friendly towards Smith. Instead, she alleged, appellant became demanding, angry, and degrading toward her. Smith claimed that appellant acted as if she could no longer do anything right, constantly criticized her, and changed policies to intentionally throw her off. On April 2, 2001, appellant confronted Smith about making long-distance phone calls to her boyfriend and admonished her for making the calls. Following the confrontation, Smith posted a note on the office bulletin board that stated, "You will never crap on me again. I quit. Loser." She left the office at lunch time and never returned to work.

{¶ 9} On April 19, 2005, the ALJ issued a report, with findings of fact, conclusions of law, and recommendations. The report found that appellant had committed hostile-environment sexual harassment, had unlawfully retaliated against Smith, and had constructively discharged her from employment. The ALJ recommended that the commission issue a cease-and-desist order against appellant and also require appellant to pay a judgment for front and back pay to Smith.

{¶ 10} Appellant filed timely objections to the ALJ's report with the commission. Following a review of the record and report of the ALJ, the commission adopted the conclusion of the ALJ. Further, the commission ordered specific damages for "front pay" in the amount of $2,048 and "back pay" in the amount of $43,520 and required appellant to receive sexual-harassment training. Appellant appealed to the Fayette County Court of Common Pleas. The court adopted the order of the commission, finding that it was "supported by reliable, probative and substantial evidence." Appellant timely appeals to this court, raising three assignments of error

### Standard of Review

{¶ 11} For this case, the court of common pleas was required to affirm the commission's decision if the court found that there was reliable, probative, and substantial evidence in the record to support the decision. R.C. 4112.06(E); *Plumbers Steamfitters Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 20 O.O.3d 200, 421 N.E.2d 128, paragraph two of the syllabus.

{¶ 12} Appellate review of the trial court's judgment is more limited. This court may reverse a determination of the court of common pleas only on a showing that the court abused its discretion. *Ohio Civ. Rights Comm. v. Case W. Res. Univ.* (1996), 76 Ohio St.3d 168, 177, 666 N.E.2d 1376. The term "abuse of discretion" means that the trial court's judgment is "unreasonable, arbitrary or

unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 13} Assignment of error No. 1:

{¶ 14} "The trial court erred by failing to hold that there is no reliable, probative or substantial evidence which supports the Ohio Civil Rights Commission's finding of hostile environment sexual harrasment [sic] and that it is not in accordance with the law."

{¶ 15} In his first assignment of error, appellant appeals the finding of hostile-environment sexual harassment. Specifically, appellant claims that the trial court erred by finding "reliable, probative, and substantial evidence" of hostile-environment sexual harassment. Appellant argues that the record does not support a finding of hostile-environment sexual harassment, because the "severe and pervasive" element was not established.

{¶ 16} R.C. 4112.02(A) states, "It shall be an unlawful discriminatory practice: For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 17} "[F]ederal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Ohio Civ. Rights Comm. v. Ingram* (1994), 69 Ohio St.3d 89, 93, 630 N.E.2d 669.

{¶ 18} In *Hampel v. Food Ingredients Specialties, Inc.* (2000), 89 Ohio St.3d 169, 729 N.E.2d 726, the Ohio Supreme Court set forth the elements of a hostile-environment claim. To establish a claim, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment," and (4) that either the harassment was committed by a supervisor or the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take an immediate and appropriate corrective action. Id. at paragraph two of the syllabus. A sex-based hostile work environment is created when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See *Snyder v. Guardian Automotive Prods., Inc.* (N.D.Ohio 2003), 288 F.Supp.2d 868.

{¶ 19} Appellant takes issue with only the third element: whether the conduct was "severe or pervasive." Appellant claims that this element was not estab-

lished. Appellant argues that although the alleged actions in this case "may be deemed inappropriate in a professional work environment, none of the allegations (even looked at collectively)" rise to the level necessary to constitute a hostile-environment claim. To support his argument, appellant cites multiple cases in which the conduct was not severe or pervasive.

{¶ 20} In assessing whether the alleged sexual harassment is severe or pervasive, courts consider the conduct's frequency, the conduct's severity, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the victim's work performance. *Harris v. Forklift Sys.* (1993), 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295.

{¶ 21} In the instant matter, the administrative law judge stated in the findings of fact and conclusions of law, "I find that Respondent made statements to Complainant that are of a sexual nature, in addition to one occurrence where Respondent physically touch Complainant. * * * [T]he inappropriate comments and gestures of a sexual nature occurred over six (6) work days. * * * Respondent's practice was busy and Complainant testified that Respondent's demeanor toward her affected her work. * * * She told two coworkers that she was uncomfortable with the inappropriate comments that Respondent was making to her, in addition to telling them about Respondent asking her to go to dinner with him. * * * I find that the conduct complained of by Complainant involved 'multiple and varied combinations and frequencies of offensive exposures' and, therefore, altered the conditions of Complainant's workplace environment."

{¶ 22} The commission stated in its order, "The Commission adopts the Administrative Law Judge's Legal findings. * * * Respondent subjected Complainant to a sexually offensive, intimidating and hostile work environment. * * * Over a period of six work days, from Monday, February 19, her first day on the job, until Tuesday, February 27, Complainant testified that Respondent engaged in the following types of sexual behavior:

{¶ 23} "i. sexual comments, both innuendo and explicit: sixteen (16) single incidents, and four (4) incidents where the same comments or acts were made on more than one occasion,

{¶ 24} "ii. physical contact of a sexual nature, one (1) incident, where Respondent tried to hug Complainant from behind."

{¶ 25} Following a review of the record, the trial court held, "With respect to the 'Severe' or 'Pervasive' element issue, the Court finds sufficient reliable, probative and substantial evidence supporting the Commission's finding. The record shows that, while Respondent–Appellee's period of employment was rather brief, it included numerous and escalating instances of sexual harassment

by Petitioner–Appellant. This harassment was unwelcome and consistently rebuffed by Respondent–Appellee. Her attempts to ignore or placate Petitioner–Appellant were completely ineffective."

{¶ 26} Having reviewed the record, we find that the trial court did not abuse its discretion in finding that there was sufficient reliable, probative, and substantial evidence to support the "severe or pervasive" element of hostile-environment sexual harassment. Appellant's first assignment of error is overruled.

{¶ 27} Assignment of error No. 2:

{¶ 28} "The trial court erred by failing to hold that there is no reliable, probative or substantial evidence which supports the Ohio Civil Rights Commission's finding of retaliatory constructive discharge and that it is not in accordance with the law."

{¶ 29} Appellant argues in his second assignment of error that the elements of a retaliation and constructive discharge claim were not established. Appellant claims that there is "simply no evidence in the record" to show that a reasonable person would have been compelled to resign Smith's position. Appellant acknowledges that he "can be forceful and angrily correct employees" at work, but his actions and reactions toward Smith were no different than his actions toward other employees, and Smith was never threatened with termination.

{¶ 30} R.C. 4112.02(I) states, "It shall be an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge * * * in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

{¶ 31} To establish a prima facie case of unlawful retaliation, the employee must show that (1) the employee engaged in a protected activity, (2) the employer knew of employee's participation in the protected activity, (3) the employer engaged in retaliatory conduct, and (4) a causal link existed between the protected activity and the adverse action. *Hollins v. Atlantic Co., Inc.* (C.A.6, 1999), 188 F.3d 652, 661.

{¶ 32} In order to prove constructive discharge, the plaintiff must prove that the employer's actions made the plaintiff's working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign. *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 664 N.E.2d 1272, paragraph four of the syllabus.

{¶ 33} In the case at bar, the administrative law judge found that Smith "confronted Respondent on February 27, 2001, and he stopped making inappro-

priate comments of a sexual nature to her. * * * Complainant's coworkers testified that the relationship between Respondent and Complainant changed. In their presence they noticed that Respondent ignored Complainant and did not engage in and avoided having conversations with her. * * * Before Complainant asked Respondent to stop making inappropriate comments of a sexual nature to her, he often made positive comments to her about her job performance. After Complainant asked Respondent to stop making inappropriate comments of a sexual nature to her, his opinion regarding her job performance was negative. * * * He ignored her, would not greet her in the morning as he greeted her coworkers, continuously changed the way he wanted her to assist him in terms of procedure, yelled at her in front of patients, slammed instruments into her hands, and caused a patient's blood to be spattered on her." As a result, the ALJ concluded that appellant had committed an illegal retaliation and had constructively discharged Smith.

{¶ 34} Upon review, the commission adopted the ALJ's legal findings, holding that "[t]he evidence in the record supports the finding that Respondent singled Complainant out for treatment that became unbearable and intolerable and unreasonably altered the terms and conditions of her employment which forced Complainant to resign."

{¶ 35} The trial court in this case stated, "After her personal confrontation with Petitioner–Appellant regarding the harassment incidents, she was subjected to such egregious treatment that she left the workplace. This termination of employment constituted a constructive discharge equivalent to being fired. * * * The Court finds as a matter of law that the findings and order of the Ohio Civil Rights Commission are supported by reliable, probative and substantial evidence."

{¶ 36} We conclude that the trial court did not abuse its discretion in adopting the findings of the Ohio Civil Rights Commission for retaliation and constructive discharge. The evidence in the record supports the trial court's conclusion that there was reliable, probative, and substantial evidence of retaliation and constructive discharge. Appellant's second assignment of error is overruled.

{¶ 37} Assignment of error No. 3:

{¶ 38} "The trial court erred by failing to hold that there is no reliable, probative or substantial evidence which supports the Ohio Civil Rights Commission's calculation of damages and that it is not in accordance with the law."

{¶ 39} Appellant argues in his third assignment of error that there is no evidence to support the damage calculation. Appellant claims that the Ohio Civil Rights Commission calculated the amounts without any notice to appellant and without granting appellant an opportunity to be heard on the issue.

{¶ 40} Based on the findings of discrimination, retaliation, and constructive discharge in this case, the Ohio Civil Rights Commission awarded Smith a judgment of $43,520 for "the amount that Complainant would have earned had she been employed as a chair side dental assistant by Respondent from April 2, 2001 and continued to be so employed up to the date of this order, including any raises that she would have received, less her interim earnings during that period, plus interest at the maximum rate allowed by law." Further, the commission ordered appellant to pay $2,048 for "the same wage she would have been paid as a chair side dental assistant with benefits and raises that she would have been entitled to for a total of four (4) months, less interim earnings calculated from the date of the Commission's final order." The commission stated that these amounts were "based on the evidence in the record."

{¶ 41} In its decision, the trial court stated, "Compensation for lost income, past and future, is presumed for successful discrimination claimants. The law requires reasonable calculation and ambiguities must be resolved in favor of the claimant."

{¶ 42} Under R.C. 4112.05(G), upon a finding of reliable, probative, and substantial evidence that an unlawful discriminatory practice has been engaged in, the Ohio Civil Rights Commission may impose remedies and damage awards. R.C. 4112.05(G) states that the commission may order "the respondent to cease and desist from the unlawful discriminatory practice, requiring the respondent to take any further affirmative or other action that will effectuate the purposes of this chapter, including, but not limited to, hiring, reinstatement, or upgrading of employees with or without back pay, or admission or restoration to union membership, and requiring the respondent to report to the commission the manner of compliance. If the commission directs payment of back pay, it shall make allowance for interim earnings."

{¶ 43} "The purpose of a back-pay award is to make the wrongfully terminated employee whole and to place that employee in the position the employee would have been in absent a violation of the employment contract." *Stacy v. Batavia Local School Dist. Bd. of Edn.*, 105 Ohio St.3d 476, 2005-Ohio-2974, 829 N.E.2d 298, ¶ 26. In order to recover back pay, a plaintiff has a duty to mitigate. *Ford Motor Co. v. E.E.O.C.* (1982), 458 U.S. 219, 231, 102 S.Ct. 3057, 73 L.Ed.2d 721. "Interim earnings or amounts earnable with reasonable diligence * * * shall operate to reduce the back pay otherwise allowable." Id. "This duty, rooted in an ancient principle of law, requires the claimant to use reasonable diligence in finding other suitable employment. Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to backpay if he refuses a job substantially equivalent to the one he [lost]." Id.

{¶ 44} Front pay is "the monetary equivalent of reinstatement, to be given in situations where reinstatement is impracticable or impossible." *Kramer v. Logan Cty. School Dist. No. R–1* (C.A.8, 1998), 157 F.3d 620, 626. Front pay is awarded only "where reinstatement is inappropriate and the plaintiff has been unable to find another job, in order to 'make victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment.'" *Reed v. A.W. Lawrence & Co., Inc.* (C.A.2, 1996), 95 F.3d 1170, 1182, quoting *Padilla v. Metro–North Commuter RR.* (C.A.2, 1996), 92 F.3d 117, 125. As with back pay, in order to recover front pay, the plaintiff has the duty to exercise reasonable diligence in mitigating damages by seeking alternative employment. Id.

{¶ 45} After a review of the record, we are unclear how the commission determined the damage awards in this case. The only income-related documents in the record for Smith are her income-tax returns from 2001 and 2002. In 2001, Smith's reported income was $15,947, with $2,509 attributed to the dates she worked with appellant and the remainder attributed to various other employers. In 2002, Smith's reported income was $19,207, all from the same employer. Other income-related evidence in the record includes the pay rate that Smith was receiving from appellant and the other employers. Additionally, it is clear that Smith was unemployed or underemployed for a period of time following her discharge by appellant. However, it is unclear how the commission arrived at the $43,520 and $2,048 figures in light of the limited financial evidence in the record. It may very well be that the judgment award included reimbursement for medical bills, insurance, and other expenses, but there is no evidence in the record relating to those expenses, and the commission failed to demonstrate how the damage figures were calculated in its final order.

{¶ 46} Further, due to this deficiency in the record, the trial court also failed to support its finding that the damage calculation was supported by reliable, probative, and substantial evidence. As a result, we hold that the trial court abused its discretion in adopting the commission's order.

{¶ 47} Accordingly, we reverse the decision of the trial court and remand this cause to the trial court for further proceedings as to the damage calculation in accordance with this decision. Appellant's third assignment of error is sustained.

{¶ 48} The judgment is affirmed in part and reversed in part. The matter is remanded to the trial court for further proceedings in accordance with this decision.

Judgment affirmed in part
and reversed in part,
and cause remanded.

YOUNG, P.J., and POWELL, J., concur.